[No. S112943. Dec. 2, 2004.]

TERRY TIPTON-WHITTINGHAM et al., Plaintiffs and Appellants, v.
CITY OF LOS ANGELES, Defendant and Appellant.

**COUNSEL**

Law Office of Carol A. Sobel, Carol A. Sobel; Litt & Associates, Barrett S. Litt, Paula A. Daniels; English, Munger & Rice, Constance L. Rice; NAACP Legal Defense and Educational Fund, Theodore Shaw; ACLU Foundation of Southern California, Mark D. Rosenbaum; Schonbrun, Desimone, Seplow, Harris & Hoffman and Paul L. Hoffman for Plaintiffs and Appellants.

Bill Lockyer, Attorney General, Manuel M. Medeiros, State Solicitor General, Richard M. Frank, Chief Assistant Attorney General, Theodora Berger, Assistant Attorney General, and Edward G. Weil, Deputy Attorney General, as Amici Curiae on behalf of Plaintiffs and Appellants.

F. Paul Bland, Kerry-Ann T. Powell, Victoria W. Ni, Arthur H. Bryant; Michael Schuster, Deborah Zuckerman; and Mark Savage for Trial Lawyers for Public Justice, AARP, ACLU of Northern California, ACLU of San Diego and Imperial Counties, Asian Law Caucus, Asian Pacific American Legal Center of Southern California, Bet Tzedek-The House of Justice, California League for Environmental Enforcement Now, California Women's Law Center, Consumers Union of U.S., Inc., Disability Rights Advocates, Disability Rights Education and Defense Fund, Inc., the First Amendment Project, The Impact Fund, Law Offices of Joaquin G. Avila, Lawyers' Committee for Civil Rights of the San Francisco Bay Area, Legal Aid Foundation of Los Angeles, Mexican American Legal Defense and Educational Fund, National Association of Consumer Advocates, National Center for Youth Law, Prison Law Office, Protection and Advocacy, Inc., Public Advocates, Inc., Public Citizen, Public Counsel, Public Interest Law Project, Rosen, Bien & Asaro, Western Center on Law and Poverty, Western Law Center for Disability Rights and Youth Law Center as Amici Curiae on behalf of Plaintiffs and Respondents.

Rockard Delgadillo, City Attorney, Claudia McGee Henry and Gary G. Geuss, Assistant City Attorneys, Angel Manzano, Jr., Deputy City Attorney; Bergman & Dacey, Gregory M. Bergman, Mark W. Waterman and Beth D. Orellana for Defendant and Appellant.

Marsha Jones Moutrie, City Attorney (Santa Monica), for League of California Cities and California State Association of Counties as Amici Curiae on behalf of Defendant and Appellant.

Somach, Simmons & Dunn, Timothy M. Taylor, Erica R. Arceo and Nicholas A. Jacobs for Western Placer Waste Management Authority as Amicus Curiae on behalf of Defendant and Appellant.

## OPINION

**MORENO, J.**—We granted the request of the United States Court of Appeals for the Ninth Circuit to answer two related questions of law. (Cal. Rules of Court, rule 29.8.) (1) May attorney fees, as provided for in Code of Civil Procedure section 1021.5 and Government Code section 12965, subdivision (b), be awarded where the plaintiff has been the "catalyst" in bringing about the relief sought by the litigation? (2) If the catalyst theory is viable under California law, will that theory support an award of attorney fees where the plaintiff "activates" the defendant to modify its behavior; or does California law require a judicially recognized change in the legal relationship between the parties, such as a judgment on the merits, a consent decree, or a judicially ordered settlement?

The facts, as described in the request for decision, are as follows: The City of Los Angeles (the City), appeals from the district court's order of September 21, 2001, awarding interim catalyst attorney fees and costs, under California law, to plaintiffs, Terry Tipton-Whittingham et al. The case filed in the district court is a class action on behalf of women officers and women civil employees of the Los Angeles Police Department (LAPD) who allege they have been subjected to discrimination on the basis of sex and/or race. Plaintiffs sought injunctive relief and damages pursuant to federal and state constitutional claims, federal and state statutory claims, and state tort claims.

After the case was filed, the parties entered into settlement discussions leading to a consent decree that later was revoked by United States District Judge Keller. Thereafter, plaintiffs began new settlement discussions with the newly appointed LAPD Chief, Bernard C. Parks. Those talks did not result in any contractual or court-ordered agreement. Instead, the LAPD voluntarily instituted several changes directed toward antidiscrimination. Noting that the changes were very similar to the original consent decree, plaintiffs represented to the district court that their injunctive relief claims were moot as they had been "resolved informally through negotiations that have not resulted in a formal agreement between the parties, but have resulted in comprehensive change sufficient to moot plaintiffs' claims." On a joint motion of the parties, the district court dismissed plaintiffs' claims for injunctive relief. Approximately one year later, plaintiffs moved for attorney fees and costs under California Code of Civil Procedure section 1021.5 and the Fair Employment and Housing Act (FEHA), Government Code section

12965, subdivision (b). They asserted they had prevailed on their state and federal injunctive relief claims as evidenced by the City's policy changes, and they contended their efforts had brought about those changes. United States District Judge Terry J. Hatter, Jr., granted the motion, awarding plaintiffs costs and more than $1,703,383 in attorney fees. The City did not appeal from that order and in fact paid the award in the fall of 2000.

On July 20, 2001, the City moved for reconsideration of the district court's order in light of the United States Supreme Court's decision in *Buckhannon Board & Care Home, Inc. v. West Virginia Dept. of Health and Human Resources* (2001) 532 U.S. 598 [149 L.Ed.2d 855, 121 S.Ct. 1835], which rejected the catalyst theory as a legal basis for the recovery of prevailing-party attorney fees under certain federal statutes. The district court granted the City's motion for reconsideration, denied plaintiffs attorney fees and costs under federal law, but upheld the entire award under California law. The Ninth Circuit then certified to this court the above questions pertaining to the viability of the catalyst theory under California law.

■ For the reasons explained in the companion case of *Graham v. DaimlerChrysler Corporation* (2004) 34 Cal.4th 553 [21 Cal.Rptr.3d 331], we answer the questions as follows. California law continues to recognize the catalyst theory and does not require "a judicially recognized change in the legal relationship between the parties" as a prerequisite for obtaining attorney fees under Code of Civil Procedure section 1021.5. In order to obtain attorney fees without such a judicially recognized change in the legal relationship between the parties, a plaintiff must establish that (1) the lawsuit was a catalyst motivating the defendants to provide the primary relief sought; (2) that the lawsuit had merit and achieved its catalytic effect by threat of victory, not by dint of nuisance and threat of expense, as elaborated in *Graham*; and (3) that the plaintiffs reasonably attempted to settle the litigation prior to filing the lawsuit.

Because this case concerns a public entity, we emphasize another critical limitation first articulated when we originally recognized the catalyst theory over 20 years ago. In *Westside Community for Independent Living, Inc. v. Obledo* (1983) 33 Cal.3d 348 [188 Cal.Rptr. 873, 657 P.2d 365], we considered a suit demanding the defendant Secretary of the Health and Welfare Agency establish guidelines implementing legislation that would prohibit various types of discrimination by state-funded programs. We found no causal connection between the lawsuit and the eventual issuance of those regulations, the process of which was already well under way when the lawsuit was filed. The majority rejected as a factual matter the dissent's argument that the lawsuit expedited the issuance of the regulations, but went on to state that even if that were true, attorney fees should not be awarded. As

this court stated: "[A]warding attorney fees to plaintiffs on the basis of the expedited [promulgation of regulations] would have detrimental consequences for the public in future lawsuits involving similar causes of action against public agencies. Once an agency was sued, it would refrain from taking any steps that it would normally take to accelerate the promulgation process, for fear that its actions would be perceived by the court as having been induced by the litigation. To avoid the possibility of having to pay attorney fees, the agency would strictly adhere to the original timetable that it had set for completing its work. This would deprive the public of the benefit to be gained from a speedier promulgation of the regulations." (*Id.* at p. 354, fn. 6.)

We reiterate *Westside Community*'s holding. Attorney fees may not be obtained, generally speaking, by merely causing the acceleration of the issuance of government regulations or remedial measures, when the process of issuing those regulations or undertaking those measures was ongoing at the time the litigation was filed. When a government agency is given discretion as to the timing of performing some action, the fact that a lawsuit may accelerate that performance does not by itself establish eligibility for attorney fees.

The City argues that the catalyst theory will deter public agencies from making voluntary policy changes after litigation has been filed. As noted above, we have adopted the requirement that a plaintiff attempt to settle its grievance short of litigation. Thus, for example, when the responsible authorities of a public agency are unaware of a discriminatory policy by their subordinates, prompt correction of this policy once it is brought to their attention will avoid payment of attorney fees. Moreover, when a government agency is clearly given discretion to choose among a number of courses of action, the fact that it chooses to exercise its discretion in a manner favorable to a plaintiff in a lawsuit filed against it does not mean that its actions were required by law.

The certified question also asks about the viability of the catalyst theory under Government Code section 12965, subdivision (b), a part of the FEHA. That subdivision states, in pertinent part: "In actions brought under this section, the court, in its discretion, may award to the prevailing party reasonable attorney's fees and costs . . . ." The FEHA is, inter alia, a statutory expression of the fundamental policy against employment discrimination. (*Flannery v. Prentice* (2001) 26 Cal.4th 572, 584 [110 Cal.Rptr.2d 809, 28 P.3d 860].) "[S]ection 12965 [attorney] fees are intended to provide 'fair

compensation to the parties involved in the litigation at hand and encourage[] litigation of claims that in the public interest merit litigation.' " (*Ibid.*) In deciding whether to, and how to, award attorney fees under section 12965, subdivision (b), courts will look to the rules set forth in cases interpreting section 1021.5. (See, e.g., *Greene v. Dillingham Construction N.A., Inc.* (2002) 101 Cal.App.4th 418, 422 [124 Cal.Rptr.2d 250]; *Weeks v. Baker & McKenzie* (1998) 63 Cal.App.4th 1128, 1172 [74 Cal.Rptr.2d 510].)

■ In light of similarities in language and purpose between Code of Civil Procedure section 1021.5 and Government Code section 12965, subdivision (b), we conclude that the catalyst theory, as articulated above, should apply to the award of fees under the latter statute. The City's argument to the contrary is based primarily on the meaning of the term "prevailing party." ■ As explained in *Graham*, "prevailing party" and "successful party" are synonymous terms, and neither preclude the application of the catalyst theory in an attorney fee statute nor require that the successful or prevailing party obtain a court judgment. Nor do we accept the argument that anything in prior case law or legislative history binds us to accept the most recent interpretation of similar federal statutes by the United States Supreme Court. We therefore affirm that the catalyst theory, as articulated in *Graham* and above, fully applies to fees awarded under Government Code, section 12965, subdivision (b).

George, C. J., Kennard, J., and Werdegar, J., concurred.

**CHIN, J.**—I dissent. The United States Court of Appeals for the Ninth Circuit has asked us to answer two related certified questions of California law: (1) May attorney fees, as provided for in Code of Civil Procedure section 1021.5 and Government Code section 12965, subdivision (b), be awarded where the plaintiff has been the "catalyst" in bringing about the relief sought by the litigation? (2) If the catalyst theory is viable under California law, will that theory support an award of attorney fees where the plaintiff "activates" the defendant to modify its behavior; or does California law require a judicially recognized change in the legal relationship between the parties, such as a judgment on the merits, a consent decree, or a judicially ordered settlement?

The certification request (*Tipton-Whittingham v. City of Los Angeles* (9th Cir. 2003) 316 F.3d 1058, 1060–1061) informs us that plaintiffs filed this action as a class action seeking injunctive relief and damages against the City

of Los Angeles (City) on behalf of women officers and women civil employees of the Los Angeles Police Department (LAPD). The suit alleges they have been subjected to racial or sexual discrimination, or both. The parties entered into settlement discussions leading to a consent decree that the district court later revoked. The plaintiffs then began new settlement negotiations with the newly appointed Los Angeles Police Chief, Bernard C. Parks. Those talks did not result in any contractual or court-ordered agreement. Instead, the LAPD voluntarily instituted several changes directed toward antidiscrimination. Noting that the changes were similar to the original consent decree, the plaintiffs told the district court that their injunctive relief claims were moot as they had been "resolved informally through negotiations that have not resulted in a formal agreement between the parties, but have resulted in comprehensive change sufficient to moot plaintiffs' claims." On the parties' joint motion, the court dismissed the claims for injunctive relief.

Plaintiffs moved for attorney fees. They claimed they had prevailed on their injunctive relief claims due to the City's policy changes, and that their efforts had brought about those changes. The court granted the motion and awarded plaintiffs costs and more than $1,703,383 in attorney fees. Later the City moved for reconsideration of the award in light of *Buckhannon Board & Care Home, Inc. v. West Virginia Dept. of Health and Human Resources* (2001) 532 U.S. 598 [149 L.Ed.2d 855, 121 S.Ct. 1835]. The district court granted the motion for reconsideration. It denied attorney fees and costs under federal law but upheld the entire award under California law. The City appealed.

For the reasons explained in my dissent in the companion case of *Graham v. DaimlerChrysler Corporation* (2004) 34 Cal.4th 553, 584 [21 Cal.Rptr.3d 331], we should reject the catalyst theory. I would answer the certification questions as follows: (1) The catalyst theory alone will not support an award of attorney fees under California law. (2) California law requires a judicially recognized change in the legal relationship between the parties to support an award of attorney fees.

This case differs from *Graham* in one significant respect that makes the catalyst theory especially pernicious here: The defendant is a governmental entity. Plaintiffs are seeking $1.7 million in attorney fees from the *taxpayers* of Los Angeles. Obviously, it is not for this court to decide whether a federal court should award attorney fees under a state statute that federal law does not permit and, if so, how to apply the majority's catalyst jurisprudence to this case. The federal court will have to struggle with these questions. But the majority has certainly opened the door to attorney fee awards of this kind.

Thus, the taxpayers may ultimately bear the cost even though, judging from what the Ninth Circuit has informed us, no court has found that the City

or any City official ever violated the law. A city can finance a lot of municipal services for $1.7 million. It can pay for law enforcement officers, fire trucks and firefighters, parks, libraries, mental health care, and much more, all of which is actually beneficial to society. A large award like this against a school district could consume tax resources needed for teachers, textbooks, computers, music, art, and sports programs. Such an award could devastate, even bankrupt, a smaller governmental entity. Taxpayers should not have to pay millions of dollars to attorneys who never established that any public official violated the law. We should not endorse this raid on the public fisc.

In this case, the LAPD, under a newly appointed police chief, instituted voluntary changes that triggered a $1.7 million award of attorney fees against the City of Los Angeles. The threat of such large awards of attorney fees will "discourage[] public officials from taking initiatives to revise outmoded ordinances or to improve institutional conditions, because [the catalyst] theory expressly recognizes 'voluntary actions taken by a defendant' as a proper basis for a fee award . . . whether or not the court could have ordered that change in conduct. In this way, catalyst theory serves to disable public officials, who may come to fear that worthwhile changes may be retroactively linked to a lawsuit and result in a hefty bill for attorneys' fees." (*S-1 By and Through P-1 v. State Bd. of Educ.* (4th Cir. 1993) 6 F.3d 160, 172 (dis. opn. of Wilkinson, J.).)

We expressed a similar concern ourselves in *Westside Community for Independent Living, Inc. v. Obledo* (1983) 33 Cal.3d 348 [188 Cal.Rptr. 873, 657 P.2d 365], where we overturned an award of attorney fees against a governmental agency predicated on the catalyst theory. In a discussion that argues against the entire catalyst theory, and not just its application in that case, we rejected the argument that attorney fees were appropriate because the lawsuit had caused the public agency to accelerate the process of issuing certain regulations: "[A]warding attorney fees to plaintiffs on the basis of the expedited fiscal study would have detrimental consequences for the public in future lawsuits involving similar causes of action against public agencies. Once an agency was sued, it would refrain from taking any steps that it would normally take to accelerate the promulgation process, for fear that its actions would be perceived by the court as having been induced by the litigation." (*Id.* at p. 354, fn. 6.) This concern can be expressed more broadly. Awarding attorney fees on the basis of a governmental agency's voluntary actions would have detrimental consequences for the public in future lawsuits against governmental agencies. Once sued, an agency may hesitate to take steps that might be good policy, although not legally required, for fear that its actions will expose it to substantial attorney fee awards.

We should reject the entire catalyst theory, not extend it to governmental defendants.

Baxter, J., and Brown, J., concurred.