Filed 8/21/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| ERIKKA SKINNER et al., | 2d Civil No. B299907 |
| Plaintiffs and Respondents, | (Super. Ct. No. 18CV01618) |
| | (Santa Barbara County) |
| v. | |
| KEN'S FOODS, INC., | |
| Defendant and Appellant. | |

Code of Civil Procedure[1] section 1021.5 permits a trial court to award attorney fees to a "successful party . . . in any action [that] has resulted in the enforcement of an important right affecting the public interest." This includes an action in which there has been no "'judicially recognized change in the legal relationship between the parties.'" (*Tipton-Whittingham v. City of Los Angeles* (2004) 34 Cal.4th 604, 608 (*Tipton-Whittingham*).) So long as the plaintiff's lawsuit was a catalyst motivating the defendant to change its behavior, an attorney fee award may be permitted.

---

[1] Unlabeled statutory references are to the Code of Civil Procedure.

Ken's Foods, Inc., appeals from the trial court's order granting a motion for attorney fees. Ken's contends: (1) the court mischaracterized Erikka Skinner and Ann Kenney (collectively, Respondents) as "successful parties" entitled to a catalyst fee award, and (2) the fee award is inconsistent with public policy. We affirm.

FACTUAL AND PROCEDURAL HISTORY

In 2017, Ken's sold over 200 different salad dressings, including two varieties of Greek dressing, 10 varieties of Italian dressing, and six varieties of vinaigrette. One each of the Greek, Italian, and vinaigrette varieties contained olive oil as an ingredient. To distinguish these dressings from the others, Ken's highlighted the ingredient on the front label of the bottle: the Greek dressing was made with "imported olive oil," the Italian with "extra virgin olive oil," and the vinaigrette with "olive oil" and "extra virgin olive oil."[2] The Greek dressing contained 28 percent vegetable oil and seven percent olive oil; the Italian contained 23 percent vegetable oil and three percent extra virgin olive oil; and the vinaigrette contained 24 percent canola oil, 17 percent olive oil, and 11 percent extra virgin olive oil.

Skinner purchased a bottle of Ken's vinaigrette in 2017. She noted that the label on the neck of the bottle said, "Made with Extra Virgin Olive Oil." She understood this to mean that the dressing was made primarily or exclusively with extra virgin olive oil. She bought the dressing because she likes the taste and health benefits of olive oil.

Kenney bought bottles of Ken's Greek and Italian dressings in 2017. She noted that the front labels on the bottles

---

[2] Subsequent references to Greek, Italian, and vinaigrette dressings are to those containing olive oil.

of these dressings mentioned olive oil and no other oil. She understood this to mean that the dressings contained only, or at least mostly, olive oil. She purchased the dressings in reliance on the front labels' references.

In June 2017, Respondents served a prelawsuit notice and demand on Ken's, claiming that its salad dressing labels were deceptive. Respondents demanded that Ken's "[r]emove all false and misleading claims from the labels and packaging of the [dressings]" and "[r]emove all references in the advertising to any and all false and misleading claims." They also demanded that Ken's establish a fund to refund its ill-gotten gains and pay $250,000 in attorney fees, $2,000 to each Respondent, and costs.[3] Ken's rejected these demands.

The following month, the parties submitted the matter to a retired judge for neutral case evaluation. In October, the judge concluded that Respondents could likely show that Ken's conduct was deceptive, as required for a successful claim under the Consumers Legal Remedies Act (CLRA; see Civ. Code, § 1750 et seq.). He also concluded that Respondents would likely be able to establish liability pursuant to the False Advertising Law (FAL; see Bus. & Prof. Code, § 17500 et seq.) and Unfair Competition Law (UCL; see Bus. & Prof. Code, § 17200 et seq.) because Ken's "cherry-picked olive oil as an ingredient to display on the front label," which was "likely to deceive" consumers. The FAL and UCL claims could likely be certified as class actions, but class certification of the CLRA claim would prove difficult since

---

[3] Respondents had incurred about $40,000 in attorney fees when they sent their demand letter. Their proposed settlement did not include a recovery for the putative class as a whole.

damage assessments pursuant to that theory required individualized inquiries.

After receiving the case evaluation, Respondents proposed submitting the case to the evaluator for mediation. Ken's declined. Respondents then invited Ken's to engage a different mediator. Ken's requested two weeks to consider this, and asked Respondents to refrain from filing their lawsuit in the interim. Respondents agreed. On November 15, Ken's told Respondents that it was "not prepared to make any offer of settlement" and would "vigorously defend [itself] against any and all claims."

That same day, Ken's executives drafted a Microsoft PowerPoint presentation entitled "Label Update Scope," which discussed several issues with its salad dressing labels. One slide read: "'Made with' claim litigation[:] *Highlighting an ingredient on the main panel when it is not the predominant ingredient in comparison to other similar classifications of ingredients used in that product (Oils, Cheese, Sweeteners).*" (Original italics.) Another noted that imported olive oil was not the predominant oil in Ken's Greek dressing. Another said that extra virgin olive oil was not the "first oil" in the Italian dressing. Another noted that canola oil was the predominant oil in the vinaigrette. Respondents' then-anticipated lawsuit was referenced several times throughout the presentation, as were similar lawsuits that had been brought against other salad dressing manufacturers.

Ken's executives met in December to discuss possible label changes. They decided to remove the "Made with Extra Virgin Olive Oil" claim from the vinaigrette and remove mention of "Imported Olive Oil" from the Greek dressing. These changes went into effect in January and March 2018, respectively.

4

Respondents were unaware of these decisions when they filed a class action complaint against Ken's in April 2018, alleging violations of the CLRA, FAL, and UCL. For the CLRA claim, Respondents asserted that Ken's "false and misleading labeling and advertising should be enjoined due to its false, misleading, and/or deceptive nature." For the FAL claim, they sought an order "enjoining [Ken's] from continuing to engage, use, or employ their practice of falsely advertising that the [dressings] are olive oil dressings." For the UCL claim, they sought an order "enjoining [Ken's] from continuing to engage, use, or employ their practice of advertising the sale and use of the [dressings] in the manner alleged herein." They also sought class certification, punitive damages, and attorney fees.

Ken's demurred to the complaint. The trial court overruled the demurrer, finding it "entirely reasonable" that a front label stating that a dressing was made with olive oil—without mentioning any other oil—could lead a reasonable consumer to believe that olive oil makes up a significant portion of the oil in the dressing. The court rejected Ken's argument that the consumer should be "'expected to look beyond a misleading representation on the front of the [bottle] to discover the truth from the ingredient list in small print on the [back].'" (Quoting *Williams v. Gerber Prods. Co.* (9th Cir. 2008) 552 F.3d 934, 939-940 (*Williams*).)

In August, Respondents received responses to their discovery requests and learned that Ken's had removed the reference to extra virgin olive oil from the vinaigrette label and the reference to imported olive oil from the Greek dressing label. Upon learning of these changes, Respondents offered to discuss settlement with Ken's. Ken's rejected the offer. Respondents

5

proposed settlement discussions again in November, but Ken's again refused.

At a December deposition, a Ken's vice president said that the company began to discuss relabeling its dressings a year earlier. He admitted that Respondents' lawsuit was a factor in the decision: "Certainly was a discussion point. It wasn't the only factor . . . [b]ut it was part of the conversation." He also admitted that Respondents' lawsuit led, in part, to the PowerPoint presentation, and that the suit was referenced in the presentation. He maintained, however, that Ken's decided to relabel its salad dressings because of the "time and energy" that litigation requires and a "concern about frivolous lawsuits."

At another December deposition, a Ken's employee said that the company was in the process of removing references to olive oil from its salad dressing labels, including the "made with extra virgin olive oil" claim from its Italian dressing. He confirmed that Ken's began to discuss the label changes in late 2017. He said that the company "was aware of the nature of claims being made against other manufacturers," and that it wanted to "avoid[] potential litigation." Respondents' lawsuit helped prompt the company to implement the label changes.

After the depositions, Respondents sought to determine whether the label changes to the three dressings would be permanent. At a February 2019 hearing, Ken's told the trial court that they would be. Five days later, Respondents emailed Ken's, noting that their "primary litigation objective . . . [was Ken's] cessation of the 'made with olive oil' claims from the labels of the three [dressings] at issue." In light of the representation that the label changes were permanent, Respondents' claims for injunctive relief appeared to be moot.

6

They stated their willingness to either settle the case or file a motion for catalyst fees.

When Ken's rejected the offer to discuss settlement, Respondents moved for a catalyst fee award. The trial court denied Respondents' motion without prejudice because the case had not yet resolved. Respondents then moved to dismiss their lawsuit. The court granted their motion, retaining jurisdiction to rule on a renewed motion for catalyst fees.

The trial court granted Respondents' renewed motion in July, applying the three-part test in *Tipton-Whittingham*. First, Respondents' lawsuit was a substantial factor motivating Ken's to change its labels. Second, their claims had merit since the front labels emphasized olive oil as an ingredient but the dressings contained only a "miniscule amount" of it. Finally, Respondents made reasonable settlement efforts. They were thus entitled to $387,593 in attorney fees and $15,771 in costs.

## DISCUSSION

### *Catalyst fee award*

Ken's contends the trial court erred when it concluded that Respondents were "successful parties." We disagree.

Section 1021.5 permits a trial court to award attorney fees to a "successful party . . . in any action [that] has resulted in the enforcement of an important right affecting the public interest." Our Supreme Court has "taken a broad, pragmatic view of what constitutes a 'successful party'" for purposes of section 1021.5. (*Graham v. DaimlerChrysler Corp.* (2004) 34 Cal.4th 553, 565 (*Graham*).) It has approved fee awards in cases that "'d[id] not result in a favorable final judgment'" (*ibid.*) and in cases where there was no "'judicially

7

recognized change in the legal relationship between the parties'" (*Tipton-Whittingham*, *supra*, 34 Cal.4th at p. 608), so long as "the defendant change[d] [their] behavior substantially because of, and in the manner sought by, the [plaintiff]" (*Graham*, at p. 560). "The critical fact [was] the impact of the action, not the manner of its resolution." (*Folsom v. Butte County Assn. of Governments* (1982) 32 Cal.3d 668, 685.)

In the absence of a judicial resolution, a plaintiff may be considered a "successful party" for purposes of section 1021.5 if: (1) their lawsuit was a "catalyst motivating the defendant[] to provide the primary relief sought"; (2) their lawsuit "had merit and achieved its catalytic effect by threat of victory, not by dint of nuisance and threat of expense"; and (3) they "reasonably attempted to settle the litigation prior to filing the lawsuit." (*Tipton-Whittingham*, *supra*, 34 Cal.4th at p. 608.) We review the trial court's conclusion that Respondents met these criteria for abuse of discretion. (*Graham*, *supra*, 34 Cal.4th at p. 578; see *La Mirada Avenue Neighborhood Assn. of Hollywood v. City of Los Angeles* (2018) 22 Cal.App.5th 1149, 1157.) We will reverse only if there is "'no reasonable basis'" for the court's conclusion. (*Westside Community for Independent Living, Inc. v. Obledo* (1983) 33 Cal.3d 348, 355 (*Westside Community*).)

### 1. Motivating catalyst

For purposes of section 1021.5, a plaintiff's lawsuit is a "catalyst" if it induces the defendant to voluntarily provide the relief sought. (*Graham*, *supra*, 34 Cal.4th at pp. 566-567.) A lawsuit induces such relief if it is "a 'material factor'" in motivating the defendant, or if it "'contribute[s] in a significant way' to the result achieved." (*Westside Community*, *supra*, 33 Cal.3d at p. 353.) But it is "not require[d] that [the] litigation *be*

8

*the only cause* of [the] defendant's acquiescence." (*Hogar Dulce Hogar v. Community Development Com. of City of Escondido* (2007) 157 Cal.App.4th 1358, 1365, original italics (*Hogar Dulce*).) Rather, the plaintiff's lawsuit need only be a "substantial factor" in motivating the defendant. (*Ibid*.)

Here, Respondents served Ken's with their prelawsuit notice and demand to remove claims about olive oil from the labels on its salad dressings in June 2017. In October, a neutral case evaluator concluded that Respondents' CLRA, FAL, and UCL claims likely had merit, and that the FAL and UCL claims would likely be certified as a class action. The following month, Ken's drafted a PowerPoint presentation that described Respondents' claims. It also proposed label changes. The company thereafter revised its dressing labels, finalizing changes to the Greek dressing in January 2018, the vinaigrette in March, and the Italian dressing a few months later. This sequence of events provides a reasonable basis for the trial court's conclusion that Respondents' lawsuit was a catalyst motivating Ken's to change the labels on its salad dressings. (See, e.g., *Hogar Dulce*, *supra*, 157 Cal.App.4th at pp. 1367-1368 [changes following demand give rise to inference that plaintiff's lawsuit was catalyst motivating change].)

Ken's counters that it implemented its label changes not because of Respondents' lawsuit but because it wanted to avoid the experience of its competitors. But Ken's executives admitted that Respondents' lawsuit was a factor motivating it to implement the label changes. The trial court credited those admissions, and we cannot substitute a contrary view for that of the court below. (*Coalition for a Sustainable Future in Yucaipa v. City of Yucaipa* (2015) 238 Cal.App.4th 513, 522.)

9

Nor would we. "'"[D]efendants, on the whole, are usually rather reluctant to concede that the [threat of] litigation prompted them to mend their ways.'" [Citations.]" (*MacDonald v. Ford Motor Company* (N.D.Cal. 2015) 142 F.Supp.3d 884, 891.) Here, Ken's began to discuss changes to its salad dressing labels only *after* it received Respondents' demand letter and *after* the case evaluator determined that they would likely succeed on their claims. The company's claim that it was going to remove references to olive oil from its labels irrespective of those acts "relies too heavily on the power of coincidence" to be believed. (*Id.* at p. 892.)

Ken's also claims Respondents primarily sought economic relief, which they did not receive. But Respondents' demand letter requested that the company "[r]emove all false and misleading claims from the labels." For each of the claims in their complaint, they sought an order enjoining the misleading labeling and advertising practices. And after the February 2019 hearing where Ken's said that its label changes would be permanent, Respondents said that their "primary litigation objective"—the "cessation of the 'made with olive oil' claims from the labels of the three [dressings] at issue"—appeared to be moot. There was thus a reasonable basis for the trial court to conclude that injunctive relief was the primary relief sought.

Ken's claim that this case is similar to *NEI Contracting & Engineering, Inc. v. Hanson Aggregates, Inc.* (S.D.Cal., May 31, 2017, No. 12-CV-01685-BAS(JLB)) 2017 WL 2363163 is not persuasive. In that case, the trial court was unpersuaded that a change in the defendant's behavior was the plaintiff's primary goal since it sought more than $1 billion in classwide damages and continued to prosecute the case for

10

several months after it learned of the defendant's changed conduct. (*Id*. at pp. *5-*6.) Here, in contrast, Respondents did not include a precise amount of actual damages in their prayer for relief. And less than a week after Ken's admitted that the changes to its dressing labels would be permanent, Respondents sought to end the case. The trial court thus did not abuse its discretion when it found that Respondents' lawsuit was a catalyst motivating Ken's to permanently change its salad dressing labels.

### 2. *The merits of Respondents' lawsuit*

For purposes of section 1021.5, a lawsuit has merit if it is "not 'frivolous, unreasonable, or groundless.'" (*Graham*, *supra*, 34 Cal.5th at p. 575.) Determining that a lawsuit is meritorious does not require the trial court to make a "final decision on the merits." (*Ibid*.) Rather, it simply requires the court to "determin[e] . . . '"that the questions of law or fact are grave and difficult."' [Citations.]" (*Id*. at pp. 575-576.) Here, that determination turns on whether the labels were likely to deceive a "reasonable consumer." (*Kasky v. Nike, Inc.* (2002) 27 Cal.4th 939, 950-951 (*Kasky*) ["reasonable consumer" standard applies to FAL and UCL claims]; *Aron v. U-Haul Co. of California* (2006) 143 Cal.App.4th 796, 806 (*Aron*) [standard applies to CLRA claims].)

"A 'reasonable consumer' is '[an] ordinary consumer acting reasonably under the circumstances' [citation]." (*Colgan v. Leatherman Tool Group, Inc.* (2006) 135 Cal.App.4th 663, 682 (*Colgan*).) Such a consumer "need not be 'exceptionally acute and sophisticated,'" nor must they "necessarily be wary or suspicious of advertising claims." (*Lavie v. Procter & Gamble Co.* (2003) 105 Cal.App.4th 496, 509-510.) Rather, to meet the "reasonable consumer" standard, "a plaintiff need only show that members of

11

the public are likely to be deceived" by the defendant's advertising.  (*Colgan*, at p. 682.)  Members of the public are likely to be deceived by advertising that is false and by advertising that, "'although true, is either actually misleading or . . . has a capacity, likelihood, or tendency to deceive or confuse the public.' [Citation.]"  (*Kasky*, *supra*, 27 Cal.4th at p. 951.)

The trial court correctly concluded that whether members of the public were likely to be deceived by Ken's labels presents "grave and difficult" questions of law or fact.  The Greek, Italian, and vinaigrette dressings all referenced olive oil on their front labels.  Respondents claimed they relied on these references when purchasing the dressings, and were upset when they discovered that each dressing contained significantly more vegetable or canola oil than olive oil.  That is a sufficient basis for the court below to conclude that Respondents' lawsuit had merit. (See, e.g., *Colgan*, *supra*, 135 Cal.App.4th at p. 682 [lawsuit meritorious where plaintiffs testified that they were misled by the defendant's "Made in U.S.A." claim about foreign-made products].)

Ken's argues that its labels were literally true.  But "'[a] perfectly true statement couched in such a manner that it is likely to mislead or deceive the consumer . . . is actionable.' [Citation.]"  (*Aron*, *supra*, 143 Cal.App.4th at p. 807.) "[R]easonable consumers should [not] be expected to look beyond misleading representations on the front of [a bottle] to discover the truth from the ingredient list in small print on the [back]." (*Williams*, *supra*, 552 F.3d at p. 939.)  As our colleagues in the Fourth Appellate District have stated, "You cannot take away in the back fine print what you gave on the front in large conspicuous print.  The ingredient list must *confirm* the

12

expectations raised on the front, not contradict them." (*Brady v. Bayer Corp.* (2018) 26 Cal.App.5th 1156, 1172 (*Brady*), original italics.)

In claiming that Respondents should have carefully examined the back labels' lists of ingredients, Ken's requires too much. Reasonable consumers are not required to be "versed in the art of inspecting and judging a product . . . [or] the process of its preparation or manufacture." (*Colgan, supra,* 135 Cal.App.4th at p. 682.) Yet Ken's would require just that, forcing them to glean from an ingredient list in small print on the back of a bottle the limitations to the representations made in large print on the front. The law imposes no such requirement. (*Brady, supra,* 26 Cal.App.5th at p. 1172; *Williams, supra,* 552 F.3d at p. 939.)

Alternatively, Ken's relies on the neutral case evaluator's conclusion that the CLRA claim could likely not be certified as a class action, rendering that claim unmeritorious. But whether a claim can be certified as a class action says nothing about the merits of that claim. (*Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004, 1023.) Moreover, while "the CLRA requires a showing of actual injury as to each class member" (*Steroid Hormone Product Cases* (2010) 181 Cal.App.4th 145, 155), that injury may be presumed if the misrepresentation is material (*id.* at pp. 156-157). Materiality is an objective inquiry, and is thus well suited to class treatment. (*Id.* at p. 157.)

Finally, Ken's argues that even if Respondents' claims objectively had merit, it changed its salad dressing labels in response to the "dint of nuisance and threat of [litigation] expense" generally, not in response to Respondents' lawsuit.

13

(*Tipton-Whittingham*, *supra*, 34 Cal.4th at p. 608.) This argument is best resolved by the trial court, which rejected it. The argument also misconstrues the relevant inquiry. To determine whether a lawsuit has merit, a "court is to inquire not into a defendant's subjective belief about the suit but rather to gauge, *objectively speaking*, whether the lawsuit had merit." (*Graham*, *supra*, 34 Cal.4th at p. 575, italics added.) It did.

### 3. *Respondents' settlement attempts*

Before receiving a catalyst fee award, a plaintiff must show that they "reasonably attempt[ed] to settle the matter short of litigation." (*Graham*, *supra*, 34 Cal.4th at p. 577.) "Lengthy prelitigation negotiations are not required." (*Ibid.*) "[B]ut a plaintiff must at least notify the defendant of [their] grievances and proposed remedies[,] and give the defendant the opportunity to meet [their] demands within a reasonable time." (*Ibid.*)

Respondents far exceeded the *Graham* standards. They notified Ken's of their grievances and proposed remedies in a June 2017 letter. Ken's refused their demands and did not make a counteroffer. Respondents then agreed to submit the case to a neutral case evaluator. After he completed the evaluation, Respondents offered to let the evaluator mediate the case. Ken's refused without making a counteroffer. Respondents then proposed to submit the case to a different mediator, which Ken's again refused, telling them that it was "not prepared to make *any* offer of settlement" and would "vigorously defend [itself] against *any and all* claims." (Italics added.) Based on their demand letter, case evaluation, and two mediation offers—all of which Ken's rejected—the trial court could easily conclude that Respondents reasonably attempted to settle this matter short of litigation.

14

Ken's claims that Respondents' initial demand of $250,000 in attorney fees—which came at a time when they had only incurred about $40,000 in fees—shows that their proposed settlement was little more than "an attempted shakedown." But that demand was not based only on fees the attorneys had incurred to date; it also included estimates of Respondents' potential recovery had they won at trial and the costs Ken's would incur in defending against the lawsuit. Moreover, Ken's focus on the initial demand ignores that Respondents made three subsequent efforts at settling the case, all of which were rejected without a counteroffer.

The cases on which Ken's relies do not show that Respondents' settlement attempts were unreasonable. In *Carian v. Department of Fish & Wildlife* (2015) 235 Cal.App.4th 806, 817-819, catalyst fees were denied because the plaintiff failed to notify the relevant defendant of his demands prior to litigation. Here, in contrast, there is no question that Respondents notified the relevant defendant. In *Abouab v. City and County of San Francisco* (2006) 141 Cal.App.4th 643, 669, the plaintiffs did not make any pre-suit settlement demand. They also rejected two settlement offers from the defendant. (*Id*. at p. 673.) Here, in contrast, Respondents made the requisite pre-litigation demand. And it was Ken's, not Respondents, that rejected the settlement offers. Respondents reasonably attempted to settle their case prior to litigation.

*Public policy*

Ken's contends that even if the trial court correctly determined that Respondents met the criteria for a catalyst fee award, we should overturn that determination because such an award is inconsistent with public policy. We are not persuaded.

15

"Before a trial court may award fees, section 1021.5 requires that an action result in the enforcement of an important right and confer a substantial benefit on the public." (*Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1289.) Respondents' lawsuit "concerned the enforcement of California's consumer protection laws—an important right affecting the public interest." (*Colgan, supra*, 135 Cal.App.4th at p. 703.) It "also resulted in a significant benefit for a substantial number of people by causing [Ken's] to change its [misleading] labeling and advertising practices." (*Ibid.*) A catalyst fee award was therefore consistent with public policy.

We reject Ken's assertion that the fee award here will encourage frivolous litigation and deprive meritorious defendants of opportunities to vindicate their rights. This assertion rests on the false assumption that Respondents continued to litigate their case without justification for months after learning that Ken's had changed its labels. But a full picture of the litigation timeline shows that it was Ken's, and not Respondents, that drew out the case.

In August 2018, Respondents learned for the first time that Ken's would be removing references to olive oil from its Greek and vinaigrette dressing labels. Over the next three months, they twice offered to settle the case, but Ken's refused. Given those refusals, Respondents continued to pursue discovery, learning at a December deposition that Ken's would also be removing reference to olive oil from the label on the Italian dressing. At a hearing three months later, they learned that the label changes would be permanent. Five days after that, Respondents again offered to settle the case—an offer that Ken's again refused. They were thus forced to move for catalyst fees in

16

a last-ditch effort to "''discontinue litigation after [learning that they had] receiv[ed] through [Ken's] acquiescence the remedy [they] initially sought.'" [Citation.]" (*Graham, supra,* 34 Cal.4th at p. 573.) Awarding fees under these circumstances is entirely consistent with the public policy of this state.

DISPOSITION

The trial court's July 11, 2019, order granting Respondents' motion for attorney fees is affirmed. Respondents shall recover their costs on appeal.

CERTIFIED FOR PUBLICATION.

TANGEMAN, J.

We concur:


GILBERT, P. J.


PERREN, J.

17

Donna D. Geck, Judge

Superior Court County of Santa Barbara

_____

Sheppard, Mullin, Richter & Hampton, Andre J. Cronthall and Angela Reid, for Defendant and Appellant.

Robins Kaplan, Glenn A. Danas, Syliva R. Ewald; Clarkson Law Firm, Ryan J. Clarkson, Shireen M. Clarkson and Bahar Sodaify, for Plaintiffs and Respondents.