Filed 5/12/22  Water Audit Cal. v. Nevada Irrigation Dist. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

(Placer)

----

| | |
|---|---|
| WATER AUDIT CALIFORNIA, | C092877 |
| Plaintiff and Appellant, | (Super. Ct. No. SCV0044119) |
| v. | |
| NEVADA IRRIGATION DISTRICT, | |
| Defendant and Respondent. | |

Water Audit California (Water Audit) dismissed its underlying action against the Nevada Irrigation District (District) within two months of its filing pursuant to a stipulation between the parties.  Water Audit appeals from the denial of its subsequent motion for attorneys' fees.  Water Audit asserts it is entitled to fees under Code of Civil Procedure section 1021.5, but has failed to identify a basis to disturb the trial court's order.[1]  As such, we will affirm the order denying attorneys' fees.

---

[1]  Undesignated statutory references are to the Code of Civil Procedure.

1

## I. BACKGROUND

On December 3, 2019, Water Audit filed a petition for writ of mandate and complaint for declaratory judgment against the District. The complaint sought a declaration that the District's Hemphill Diversion in Placer County is an unlawful stream obstruction and an unlawful manner of diversion that must be remediated by the District. Water Audit also sought a writ of mandate to compel the District to remediate the Hemphill Diversion pursuant to a court ordered schedule.

On January 29, 2020, the parties entered into a stipulation for dismissal of the litigation.

The stipulation explained that the Hemphill Diversion is a structure located in Auburn Ravine near Lincoln that allows for the diversion of water from the ravine into the Hemphill Canal.

The stipulation described the District's efforts to improve fish passage since 2012. For example, the stipulation explained the District formed a group of regulatory agencies and local stakeholders to evaluate the feasibility and permitting requirements to implement strategies to improve fish passage and eliminate fish entrainment at Hemphill. The District engaged an engineering firm to investigate options for modifying or removing Hemphill. The District had contracted for California Environmental Quality Act (CEQA)[2] compliance consulting services to analyze proposed project alternatives, including removing Hemphill and installing alternative water delivery facilities for customers served by the Hemphill Canal.

The stipulation explained its purpose as follows: "With this stipulation, the parties wish to memorialize [the District]'s commitment to *continue to pursue* the removal and/or retrofit [of] Hemphill, and to dismiss the Pending Litigation during the pendency

---

[2] CEQA is codified at Public Resources Code section 21000 et seq.

2

of [the District]'s active and good faith pursuit of its ongoing environmental review and regulatory process in advance of potential project implementation as set forth below." (Italics added.)

Under the stipulation, the parties agreed:

"1. [The District]'s proposed or preferred Hemphill removal/retrofit project to be analyzed as part of its compliance with CEQA shall be a project that does not cause fish entrainment or impede fish passage; provided, however, that [the District] retains its discretion to consider any and all alternatives to the proposed project and may, in its discretion, adopt any alternative in the Board of Directors' discretion.

"2. [The District] will use its best efforts to issue a CEQA Draft Environmental Impact [Report (draft EIR)] for the Hemphill Project by April 1, 2021. [The District] will use its best efforts by Fall 2021 to (a) certify the Hemphill EIR under CEQA, adopt a project, and issue a notice of determination; (b) apply for and diligently pursue all necessary regulatory approvals to implement the adopted project; (c) secure other necessary approvals, including financing, to implement the adopted project. [The District] will use best efforts to award a construction contract to implement the project within 10 months of adoption. However, the Parties acknowledge that [the District] does not unilaterally control the timeline for obtaining the approvals necessary to complete the adopted project, and that events out of its control, including potential litigation, may delay the foregoing actions beyond Fall 2021."

The parties further agreed that the District could not commit to a particular project for the removal of Hemphill.

On January 30, 2020, the stipulation was filed with the court along with Water Audit's request for dismissal. The court did not dismiss the action at that time because the request was incomplete. The next day, Water Audit filed a new request for dismissal of the entire action without prejudice, and the court dismissed the action as requested.

3

The parties did not seek a judgment pursuant to the terms of the stipulation or request the court to retain jurisdiction.[3]

On March 2, 2020, Water Audit filed a motion for almost $130,000 in attorneys' fees pursuant to section 1021.5.

The District opposed the motion, arguing Water Audit was not a successful party under section 1021.5.

In an August 13, 2020 ruling, the trial court denied the motion, explaining that the evidence submitted by the District in opposition to the motion supported the conclusion "that prior to and at the time the litigation was filed, [the District] was steadily proceeding with removal of Hemphill, a complicated effort requiring the input of various regulatory agencies and stakeholders, environmental, engineering and geological analysis, and preparation of an EIR." Though the District had agreed to use its best efforts to issue a draft EIR by April 1, 2021, the court explained that prior to December 2019, the District had already engaged a firm to perform a CEQA analysis and draft an EIR and commissioned other engineering and geological studies to support removal of Hemphill: "In other words, this process was well underway at the time the Petition was filed." The court explained that, to the extent the stipulation caused an acceleration on the part of the District, it did not support an award of attorneys' fees.

---

[3] "If parties to pending litigation stipulate, in a writing signed by the parties outside of the presence of the court or orally before the court, for settlement of the case, or part thereof, the court, upon motion, may enter judgment pursuant to the terms of the settlement. If requested by the parties, the court may retain jurisdiction over the parties to enforce the settlement until performance in full of the terms of the settlement." (§ 664.6, subd. (a).)

## II. DISCUSSION

A.    *Standard of Review*

"Whether plaintiff established its eligibility for fees under section 1021.5 implicates 'a mixed standard of review: To the extent we construe and define the statutory requirements for an award of attorney's fees, our review is de novo; to the extent we assess whether those requirements were properly applied, our review is for an abuse of discretion.' [Citation.] 'The pertinent question is whether the grounds given by the court for its denial of an award are consistent with the substantive law of section 1021.5 and, if so, whether their application to the facts of th[e] case is within the range of discretion conferred upon the trial courts under section 1021.5, read in light of the purposes and policy of the statute.' " (*Friends of Spring Street v. Nevada City* (2019) 33 Cal.App.5th 1092, 1107.)

Further, the trial court's order is presumed correct, and the appellant must affirmatively show error. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) "To demonstrate error, appellant must present meaningful legal analysis supported by citations to authority and citations to facts in the record that support the claim of error. [Citations.] When a point is asserted without argument and authority for the proposition, 'it is deemed to be without foundation and requires no discussion by the reviewing court.' " (*In re S.C.* (2006) 138 Cal.App.4th 396, 408.) With respect to citations to the record, the appellant must "[s]upport *any* reference to a matter in the record by a citation to the volume and page number of the record where the matter appears." (Cal. Rules of Court, rule 8.204(a)(1)(C), italics added.) The parties stipulated to use the original superior court file instead of a clerk's transcript. (See Cal. Rules of Court, rule 8.128(a); Ct. App., Third Dist., Local Rules of Ct., rule 2, Stipulation for use of original superior court file.) Doing so "does not relieve either party of its obligation to provide this court with explicit page citations to the record." (*Bernard v. Hartford Fire Ins. Co.* (1991) 226 Cal.App.3d 1203, 1205.) Further, that relevant record citations may have been provided

5

elsewhere in the brief, such as in the factual background, does not cure a failure to support specific legal arguments with citations to the record. (*City of Lincoln v. Barringer* (2002) 102 Cal.App.4th 1211, 1239, fn. 16.)

B. *The Trial Court Did Not Err in Concluding Water Audit Was Not Successful*

"As a general rule, parties in litigation pay their own attorney's fees." (*La Mirada Avenue Neighborhood Assn. of Hollywood v. City of Los Angeles* (2018) 22 Cal.App.5th 1149, 1155.) "Derived from the judicially crafted 'private attorney general doctrine,' " section 1021.5 is an exception to that rule that compensates successful litigants with an award of attorneys' fees in order to encourage "meritorious public interest litigation vindicating important rights and benefitting a broad swath of citizens." (*Id*. at pp. 1155-1156.)

"A court may award attorney fees under section 1021.5 only if the statute's requirements are satisfied. Thus, a court may award fees only to 'a successful party' and only if the action has 'resulted in the enforcement of an important right affecting the public interest . . . .' [Citation.] Three additional conditions must also exist: '(a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement, or of enforcement by one public entity against another public entity, are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any.' " (*Vasquez v. State of California* (2008) 45 Cal.4th 243, 250-251.) We have no need to discuss any additional conditions because Water Audit has failed to demonstrate the court erred in concluding it was not a successful party.

Water Audit, as the moving party, bore the burden of proof to establish that it was "a successful party" in the action. (*La Mirada Avenue Neighborhood Assn. of Hollywood v. City of Los Angeles, supra*, 22 Cal.App.5th at p. 1155.) "Under section 1021.5, '[a] "successful party" means a "prevailing" party.' [Citation.] 'It is settled, however, that a

6

party need not prevail on every claim presented in an action in order to be considered a successful party within the meaning of the section.' [Citation.] A party who ' " ' "succeed[s] on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit" ' " ' [citation] may be considered a prevailing party ' " ' "for attorney's fees purposes." ' " ' [Citation.] 'The significance of the . . . issue was a matter for the trial court's judgment.' " (*Sweetwater Union High School Dist. v. Julian Union Elementary School Dist*. (2019) 36 Cal.App.5th 970, 982.)

Traditional (non-catalyst) success requires the claimant to prevail by obtaining a "judicially sanctioned" or " 'judicially recognized change in the legal relationship between the parties.' " (*Graham v. DaimlerChrysler Corp*. (2004) 34 Cal.4th 553, 594; *Tipton-Whittingham v. City of Los Angeles* (2004) 34 Cal.4th 604, 608.)

"In order to obtain attorney fees without such a judicially recognized change in the legal relationship between the parties, a plaintiff must establish that (1) the lawsuit was a catalyst motivating the defendants to provide the primary relief sought; (2) that the lawsuit had merit and achieved its catalytic effect by threat of victory, not by dint of nuisance and threat of expense . . . ; and (3) that the plaintiffs reasonably attempted to settle the litigation prior to filing the lawsuit." (*Tipton-Whittingham v. City of Los Angeles, supra*, 34 Cal.4th at p. 608.)

On appeal, Water Audit argues the stipulation was "a formal change in legal status." To the extent this argument invokes a non-catalyst theory of success, even assuming the stipulation could be used to establish a judicially recognized change in the legal relationship between the parties, Water Audit does not cite to anything *in* the stipulation (or in its complaint) to support its claim that it is a prevailing party. (See *Morrison v. Vineyard Creek L.P*. (2011) 193 Cal.App.4th 1254, 1263 ["Because the dispute in this case was resolved by a settlement agreement rather than by adjudication, we begin by examining the settlement agreement"].) As such, we need not consider its unsupported assertion. (*City of Lincoln v. Barringer, supra*, 102 Cal.App.4th at p. 1239.)

7

After discussing the standards for success under a catalyst theory, Water Audit argued it was the prevailing party because "[t]he overarching objective of this litigation was to remediate the fish passage impairment caused by the Hemphill Diversion. As discussed above, the litigation commenced by Water Audit made *great strides* to accomplishing that objective and accordingly is the successful (prevailing) party." (Italics added.) Further, Water Audit "respectfully submitted that the facts establish that (1) the lawsuit was a catalyst motivating the defendants to provide the primary relief sought; (2) that the lawsuit had merit and achieved its catalytic effect by threat of victory, not by dint of nuisance and threat of expense . . . ; and (3) that the plaintiffs reasonably attempted to settle the litigation prior to filing the lawsuit." Again, these assertions may be disregarded because they were made without reference to the record.

Further, Water Audit acknowledges "there must be a causal connection between the plaintiffs' lawsuit and the relief obtained in order to justify a fee award under section 1021.5 to a successful party. [Citation.] ' "The appropriate benchmarks in determining which party prevailed are (a) the situation immediately prior to the commencement of suit, and (b) the situation today, and the role, if any, played by the litigation in effecting any changes between the two." ' " (*Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1291; see also *Folsom v. Butte County Assn. of Governments* (1982) 32 Cal.3d 668, 671 ["a claimant settling a lawsuit may be a 'successful party' within the meaning of the section if the underlying action contributed substantially to remedying conditions at which it was directed"].) Water Audit does not address the evidence submitted by the District and relied upon by the trial court regarding the District's ongoing efforts regarding the removal of Hemphill. The trial court did not abuse its discretion in essentially concluding the lawsuit did not alter the situation in light of the District's ongoing efforts. Additionally, even if the lawsuit had some impact on the speed of the District's ongoing efforts, as the trial court noted, "[a]ttorney fees may not be obtained, generally speaking, by merely causing the acceleration of the issuance of government regulations or remedial

8

measures, when the process of issuing those regulations or undertaking those measures was ongoing at the time the litigation was filed. When a government agency is given discretion as to the timing of performing some action, the fact that a lawsuit may accelerate that performance does not by itself establish eligibility for attorney fees." (*Tipton-Whittingham v. City of Los Angeles, supra*, 34 Cal.4th at p. 609.) To the extent Water Audit suggests that, after the stipulation was filed, the District may have considered a different remediation plan from the two it had previously been considering, nothing suggests this was an objective of the litigation. Water Audit has failed to demonstrate the court erred in denying its motion for attorneys' fees.

## III. DISPOSITION

The court's August 13, 2020 order denying Water Audit's motion for attorneys' fees is affirmed. Respondent Nevada Irrigation District shall recover its costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1) & (2).)

/S/

---

RENNER, J.

We concur:

/S/

---

ROBIE, Acting P. J.

/S/

---

DUARTE, J.

9