Filed 6/8/15  Certified for Publication 7/6/15 (order attached)

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| COALITION FOR A SUSTAINABLE FUTURE IN YUCAIPA,<br>　　Plaintiff and Appellant,<br>v.<br>CITY OF YUCAIPA et al.,<br>　　Defendants and Respondents;<br><br>TARGET STORES, INC.,<br>　　Real Party in Interest and Respondent. | E057589<br><br>(Super.Ct.No. CIVSS708513)<br><br>OPINION |

APPEAL from the Superior Court of San Bernardino County.  Donald R. Alvarez, Judge.  Affirmed.

Leibold McClendon & Mann, John G. McClendon for Plaintiff and Appellant.

Richards, Watson & Gershon, David M. Snow and Ginetta L. Giovinco for Defendants and Respondents.

Holland & Knight, Amanda J. Monchamp and Melaine Sengupta for Real Party in Interest and Respondent.

1

Coalition for a Sustainable Future in Yucaipa (Coalition) filed a petition for writ of mandate against the City of Yucaipa and its City Council (collectively Yucaipa) challenging Yucaipa's approval of Oak Hills Marketplace (Project), a shopping center to be developed by Target Corporation (Target) on acreage owned by Palmer General Corporation (Palmer). That petition, filed pursuant to the California Environmental Quality Act (CEQA) was denied, and Coalition appealed that decision. That appeal became moot when Target abandoned the Project due to a contract dispute with Palmer. This Court directed that the order denying mandate be reversed with directions to dismiss the action with prejudice due to mootness. Coalition then brought a motion for attorneys' fees in the trial court, asserting that its petition was the catalyst for Yucaipa's action to revoke the entitlements. The trial court denied the motion and Coalition appealed again.

In this appeal, Coalition argues the denial of attorneys' fees was error because the mandamus petition was the catalyst motivating Yucaipa to revoke the entitlements, the relief Coalition had sought in the trial court. We affirm.

## BACKGROUND

In May 2005, Target Corporation entered into a contract with Palmer General Corporation, the owner of land in the City of Yucaipa to develop a shopping center. Under the agreement, Target agreed to purchase approximately 60 acres of the land owned by Palmer, for the development (Project).

Target applied for a Preliminary Development Plan (PDP) and a General Plan Amendment for a regional shopping center totaling approximately 613,000 square feet of

2

building space on the acreage. On October 8, 2007, at a meeting of the City Council of the City of Yucaipa, the Council conditionally approved the PDP and General Plan Amendment to adopt the land use plan for the planned development district, following an Environmental Impact Report (EIR). The council's action required that the PDP incorporate certain signage standards and other conditions, and accepted the Mitigation Measures identified in the Final EIR, as well as adoption of a Statement of Overriding Considerations.

Target was unable to complete the purchase of the land because Palmer missed deadlines and failed to complete specified off-site improvements required for the processing of off-site improvement approvals. On October 29, 2007, Target sued Palmer for Specific Performance, Breach of Contract, and Breach of Implied Covenant of Good Faith and Fair Dealing (Contract Action).

On November 8, 2007, Coalition filed a petition for writ of mandate challenging Yucaipa's approval of entitlements, asserting they violated CEQA. Target funded and defended this CEQA action on behalf of Yucaipa, pursuant to a condition that it indemnify Yucaipa found in Section 81.0150 of the City of Yucaipa's Development Code, which was included in the conditional approval of the Project.

On October 30, 2008, the trial court issued its ruling on the Petition for Writ of Mandate. The trial court granted both sides' requests for judicial notice. This included the City Council Minutes for Regular Meeting of October 8, 2007, Yucaipa Official Land Use Districts Map, dated April 24, 2008, General Land Use Element, dated July 2004;

3

City of Yucaipa General Plan, Housing Element, City of Yucaipa General Plan, City of Yucaipa General Plan Table, II-2, Official Land Use Districts Statistical Chart, dated September 28, 1992, Yucaipa City Development Code Article 2, Planned Development Review, Sections 83.030205-83.030230, and the City Development Code Chapter 11, Regulation of Hillside and/or Ridgeline Developments, Sections 87.1105-87.1180. Additionally, the court considered several documents found in the Administrative Record, which are not part of the present record on appeal.

The court found the Project was consistent with the Housing Element, and Yucaipa did not abuse its discretion in approving the EIR. The court denied the Petition for Writ of Mandate. Judgment was entered accordingly, and Coalition appealed, in Case No. E047624.

Prior to the filing of the respondent's brief in that appeal, Yucaipa and Target moved to dismiss the appeal on the ground of mootness. (*Coalition for a Sustainable Future in Yucaipa v. City of Yucaipa, et al.* (2011) 198 Cal.App.4th 939, 941.) Mootness was based on the fact that Target and Palmer had abandoned the Project due to the litigation in the contract action. (*Ibid.*) Target had dismissed the Specific Performance cause of action of the Contract action, but continued with the claims for damages against Palmer. It also informed Yucaipa that it no longer had any equitable or legal interest in the property for which the land use entitlements were approved, or in the entitlements

4

themselves.[1]  Target then filed the motion to dismiss itself from the CEQA litigation in the Court of Appeal.

As a consequence, at a regular city council meeting, Yucaipa revoked the land use entitlements for the Oak Hills Marketplace project.  The Yucaipa Agenda Report explains that when Target abandoned the Project, the city attorney sought to determine if Palmer would assume the lead in defending the appeal, but Palmer refused.  Because both Target and Palmer had refused to comply with the conditions of approval, staff had prepared the necessary ordinance and resolution to repeal the General Plan Land Use District Change, the PDP, and the certification of the EIR.

This Court requested supplemental briefing and issued a published decision in case No. E047624, in which the judgment was reversed as moot, and the trial court was directed to dismiss the underlying action with prejudice.  (*Coalition for a Sustainable Future in Yucaipa v. City of Yucaipa, supra,* 198 Cal.App.4th at p. 947.)  On December 6, 2011, on remand, the trial court did as directed, ordering the petition for writ of mandate dismissed with prejudice as to the entire action.

---

**1** Land use "entitlement" refers to the approval by the City to introduce a new or expanded land use activity on a particular site.  A new or expanded use requires one of four possible permits or licenses.  (http://yucaipa.org/development/community-development/land-use-entitlement-process/ [as of March 11, 2015].)  Conditional use permits and development approvals are land use entitlements that run with the land.  (*Maintain Our Desert Environment v. Town of Apple Valley* (2004) 124 Cal.App.4th 430, 444.)  The term has also been used in association with project approvals under CEQA.  (See 14 Cal. Code of Reg., §§ 15089-15092; *Bakersfield Citizens for Local Control v. City of Bakersfield* (2004) 124 Cal.App.4th 1184, 1221.)

On March 12, 2012, Coalition filed a motion for an award of attorney's fees pursuant to Code of Civil Procedure, section 1021.5. Coalition argued that the mandamus proceeding was the catalyst for Yucaipa's action of revoking the land use entitlements, entitling it to attorneys' fees. On June 4, 2012, the trial court denied the motion for attorneys' fees after finding that the litigation was not the catalyst for the abandonment of the project. Instead, the court determined that the evidence showed that the Palmer litigation and the failure to secure the real property on which the Project was to be located were the reasons the developer and Yucaipa elected not to proceed. The order was filed on August 30, 2012.

Coalition has now appealed that order.

## DISCUSSION

On appeal, Coalition argues that the court erred in denying its motion for attorneys' fees because there is insufficient evidence to support the trial court's finding that the mandamus action was not a catalyst for Yucaipa's rescission of its approval for the Project. It urges us to find that substantial evidence shows the mandamus proceeding was the catalyst for Yucaipa's action. We disagree.

a.    *Standard of Review*

Generally, whether a party has met the statutory requirements for an award of attorney fees is best decided by the trial court, whose decision we review for abuse of

discretion.[2]  (*Ebbetts Pass Forest Watch v. Department of Forestry and Fire Protection* (2010) 187 Cal.App.4th 376, 381 (*Ebbetts*).)  Although this standard is deferential, a court abuses its discretion where no reasonable basis for the action is shown.  (*Bui v. Nguyen* (2014) 230 Cal. App. 4th 1357, 1367-1368, citing *Westside Community for Independent Living, Inc. v. Obledo* (1983) 33 Cal.3d 348, 355.)

To determine whether the trial court abused its discretion, we must review the entire record, paying particular attention to the trial court's stated reasons in denying or awarding fees and whether it applied the proper standards of law in reaching its decision. (*Bouvia v. County of Los Angeles* (1987) 195 Cal.App.3d 1075, 1081–1082.)

The pertinent question is whether the reasons for the trial court's denial of an award are consistent with the substantive law of the Code of Civil Procedure, section 1021.5 and, if so, whether their application to the facts of the case is within the range of discretion conferred upon the trial courts under the Code of Civil Procedure, section 1021.5, read in light of the purposes and policy of the statute.  (*Marine Forests Society v. California Coastal Com.* (2008) 160 Cal.App.4th 867, 876-877 (*Marine*), citing *City of Sacramento v. Drew* (1989) 207 Cal.App.3d 1287, 1298.)

---

[2] De novo review is warranted where the determination is based on statutory construction.  (*Edna Valley Watch v. County of San Luis Obispo* (2011) 197 Cal.App.4th 1312, 1317, citing *Connerly v. State Personnel Bd.* (2006) 37 Cal.4th 1169, 1175.)

b.     *The Trial Court's Findings Are Supported by Substantial Evidence and Its Ruling was a Proper Exercise of Discretion.*

Code of Civil Procedure, section 1021.5 provides in pertinent part: "Upon motion, a court may award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement, or of enforcement by one public entity against another public entity, are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any."

The statute codifies the private attorney general doctrine the Supreme Court adopted in *Serrano v. Priest* (1977) 20 Cal.3d 25. It rests upon the recognition that privately initiated lawsuits are often essential to the effectuation of the fundamental public policies embodied in constitutional or statutory provisions, and that, without some mechanism authorizing the award of attorney fees, private actions to enforce such important public policies will as a practical matter frequently be infeasible. (*Healdsburg Citizens for Sustainable Solutions v. City of Healdsburg* (2012) 206 Cal.App.4th 988, 992.)

Entitlement to fees under Code of Civil Procedure, section 1021.5 requires a showing that the litigation (1) served to vindicate an important public right; (2) conferred a significant benefit on the general public or a large class of persons; and (3) was

8

necessary and imposed a financial burden on plaintiffs which was out of proportion to their individual stake in the matter. (*Center for Biological Diversity v. County of San Bernardino* (2010) 188 Cal.App.4th 603, 611.) The section acts as an incentive for the pursuit of public interest-related litigation that might otherwise have been too costly to bring. (*Id.* at pp. 611-612.) The private attorney general theory applies to an action to enforce provisions of CEQA. (*Id.* at p. 612, quoting *City of Carmel-by-the-Sea v. Board of Supervisors* (1986) 183 Cal.App.3d 229, 254.)

However, a party seeking an award of Code of Civil Procedure, section 1021.5 attorney fees must first be determined to be "a successful party." (*Ebbetts, supra,* 187 Cal.App.4th at p. 381.) A necessary prerequisite to recovery under the statute is the status of prevailing party. (*Miller v. Cal. Comm. on Status of Women* (1985) 176 Cal.App.3d 454, 457.) The terms "prevailing party" and "successful party" are synonymous. (*Graham v. DaimlerChrysler Corp.* (2004) 34 Cal.4th 553, 570 (*Graham*).) It is not necessary for plaintiff to achieve a favorable final judgment to qualify for attorneys' fees so long as the plaintiff's actions were the catalyst for the defendant's actions, but there must be some relief to which the plaintiff's actions are causally connected. (*Miller, supra,* at pp. 457-458; see also, *Cates v. Chiang* (2013) 213 Cal.App.4th 791, 806 (*Cates*).)

The "catalyst theory" permits an award of fees even when the litigation does not result in a judicial resolution if the defendant changes its behavior substantially because of, and in the manner sought by, the litigation. (*Marine, supra,* 160 Cal.App.4th at p.

877.) To obtain attorneys fees under this theory, a plaintiff must establish that (1) the lawsuit was a catalyst motivating the defendants to provide the primary relief sought; (2) the lawsuit had merit and achieved its catalytic effect by threat of victory, not by dint of nuisance and threat of expense; and (3) the plaintiffs reasonably attempted to settle the litigation prior to filing the lawsuit. (*Id.,* at pp. 877-878, citing *Tipton-Whittingham v. City of Los Angeles* (2004) 34 Cal.4th 604, 608.)

At the very least, a plaintiff must establish the precise factual/legal condition that it sought to change or affect as a prerequisite for establishing the catalytic effect of its lawsuit. (*Graham, supra,* 34 Cal.4th at p. 576.) When the suit is mooted early in its prosecution, it may generally be established during the attorney fee proceeding by declarations, or, at the discretion of the trial court, by an abbreviated evidentiary hearing. (*Ibid.*) The trial court may review this factual background not only to determine the lawsuit's catalytic effect, but also its merits. (*Ibid.*)

In *Graham,* the Supreme Court explained that "[t]he term 'successful party' as ordinarily understood, means the party to ligation that achieves its objectives." (*Graham, supra,* 34 Cal.4th at p. 571.) It went on to explain that if a defendant can be a prevailing or successful party after a plaintiff has voluntarily dismissed the case against it, a plaintiff can be considered a prevailing or successful party when it achieves its litigation objectives by means of defendant's "voluntary" change in conduct *in response to the litigation.* (*Id.,* at p. 572.)

10

To satisfy the causation prong of the catalyst theory, the plaintiff need not show that litigation was *the only cause* of the defendant's acquiescence, only that it was a substantial factor contributing to defendant's action. (*Hogar Dulce Hogar v. Community Development Comm.* (2007) 157 Cal.App.4th 1358, 1365 (*Hogar*); *Cates, supra,* 213 Cal.App.4th at p. 807.) In other words, it is enough that "but for" the party's legal action, the right would not have been vindicated. (*Protect our Water v. County of Merced* (2005) 130 Cal.App.4th 488, 495.) When, after litigation is initiated, a defendant has voluntarily provided the relief a plaintiff is seeking, the chronology of events may raise an inference that the litigation was the catalyst for the relief. (*Hogar, supra,* 157 Cal.App.4th at p. 1366.)

The causation issue may be resolved by relatively economical, straightforward inquiries by trial judges close to and familiar with the litigation and its determination of causation is entitled to deference by the appellate court if there is any reasonable basis in the record to support the determination. (*Cates*, *supra*, 213 Cal.App.4th at p. 808.) We are required to draw all reasonable inferences in support of the findings and view the record most favorably to the trial court's conclusion; if there is evidence to support its finding, we must affirm even if other evidence would support a contrary finding. (*Ibid*.)

In the present case, there is evidence to support the trial court's finding that the Coalition action was not a substantial factor contributing to the defendant's action. First, prior to the date the land use entitlements were revoked, the trial court had entered a judgment denying the petition for writ of mandate, which was a win for Yucaipa.

11

Coalition did not prevail, but instead appealed the judgment in January 2009.  In the meantime, in August 2009, Target dismissed its Specific Performance cause of action in the Contract litigation against Palmer  This cause of action had sought to enforce the agreement by Palmer to sell the approximately 60 acres of land to Target and constituted an abandonment of the development project.  The minutes of the Yucaipa City Council meeting of October 12, 2009, reflect that the motivation for revoking the land use entitlements for Oak Hills Marketplace was due to the fact that, in the Contract action between Target and Palmer, Target was dismissed from the lawsuit, withdrawing its defense under the indemnification agreement, and Palmer declined to take up the defense.

The Agenda Report submitted in connection with that meeting noted that on November 21, 2008, the trial court had entered a judgment in favor of Yucaipa on all causes of action in the Coalition matter, that Coalition had filed an appeal from that ruling seeking to overturn the ruling while Target and Palmer were also engaged in the Contract action.  Target sought to be dismissed from the CEQA action because it no longer had any actual or prospective interest in Palmer's land, which was the subject of the entitlements, and had no interest in the entitlements granted for the development of the shopping center.  Therefore, staff recommended that the City Council should consider revoking the entitlements for the project, as there would be no reason for the City to proceed on its own in defending a project that, for various business and economic reasons, neither Target nor the Palmers seek to pursue, and for which both have refused to comply with the conditions of approval.  Upon revocation of the entitlements, the

12

repeal of the zoning amendments was necessary "[i]n order to maintain consistency with the Official Land Use Plan (zoning) and the General Plan." The CEQA action was not the but-for cause of the revocation of the entitlements.

Second, Yucaipa did not change its behavior substantially because of, *and in the manner sought by*, the litigation. (*Marine, supra,* 160 Cal.App.4th at p. 877, italics added.) Yucaipa had been successful in defending the CEQA action and did not revoke the entitlements for any reason related to the EIR or any violation of CEQA. It was Coalition's burden to prove the nexus between the merits of its action and the reasons for Yucaipa's revocation of entitlements, but it failed. The trial court properly found that the Coalition action was not the catalyst for the revocation of the entitlements. Substantial evidence supports the trial court's findings.

Coalition argues that its action was the "but for" catalyst for Yucaipa setting aside the EIR and the entitlements because Target's decision to abandon the project did nothing to moot the action. The evidence indicates otherwise. Target's abandonment of the Project meant the development would not take place; the Project was dead. The Preliminary Development Plan approval, issued for the development, which formed the basis for the conditional land use entitlements, was nullified. Therefore, the land use entitlements were not revoked because the EIR violated CEQA, in the manner sought by the CEQA action, and was only incidentally related to that litigation. The revocation was necessary to insure consistency with the General Plan. The CEQA action was not a substantial factor contributing to Yucaipa's action.

Coalition also argues that the trial court's finding that Coalition's action was **the** motivating catalyst showed it applied the incorrect standard, placing emphasis in bold. However, our reading of the transcript indicates that in reciting its tentative ruling, the court properly considered "whether the lawsuit can be viewed as **a** catalyst which motivated the defendants to provide the relief sought." It went on to conclude that "The court does not find that this litigation was **a** catalyst for the abandonment of the project." The court's reference at the bottom of the page that it could not view "this action as the motivating catalyst for the abandonment of the project" does not mean it applied the wrong standard.

Coalition also argues its action had merit and achieved success by threat of victory. It calls into question the trial court's statement that Coalition had not shown that the appeal would have been meritorious if heard, in urging us to find error. Coalition misses the point. Its "action" was the CEQA petition, and that petition had been denied by the trial court's initial judgment, only to be later dismissed with prejudice. None of the cases applying the catalyst theory involved situations in which an adverse judgment had already been rendered against the party seeking attorneys' fees. Use of the terminology "meritorious action" in the catalyst theory cases refers to proceedings which were rendered moot *before* a judgment on the merits, in order to determine if a party was the prevailing party where there is no judgment. That did not happen here.

Further, filing an appeal from the adverse judgment does not convert an unsuccessful action into a meritorious one. A direction to dismiss the action with

14

prejudice on remand was not a favorable outcome. Having lost twice, Coalition cannot show "threat of victory." Here, Coalition lost in the trial court. If it had made a motion for attorneys' fees at that point, there is no question that it would not be entitled to recover.

Coalition asks us to determine that an appeal from an unfavorable judgment constituted a catalyst for Yucaipa's revocation of the land use entitlements. Coalition attempts to bolster this argument by intimating that the Attorney General planned to intervene, as evidence of the meritorious nature of its arguments. This argument fails because there was no *evidence* of any intended intervention by the Attorney General aside from counsel's self-serving hearsay statements. By law, the Attorney General monitors *all* CEQA cases. (Pub. Res. Code, § 21167.7.) Indeed, this statute required Coalition to serve the Attorney General with its pleadings. The fact that Coalition filed an appeal from the adverse judgment did not convert the action into a meritorious one under the catalyst theory.

In any event, the likelihood of a reversal of the trial court's judgment was minimal, at best, because on appeal from the denial of its petition for writ of mandate, just as in the mandate proceedings in the trial court, the judgment was subject to review for substantial evidence.[3] (*County of Riverside v. City of Murrieta* (1998) 65 Cal.App.4th

---

[3] Reversal was made an even more remote possibility based on the fact that our docket shows the Administrative Record was not transmitted to this Court in the prior appeal, although four volumes of a joint appendix were filed. Because review on the merits in the prior appeal would have required review of the Administrative Record in order to determine if there was substantial evidence to support the trial court's judgment,

*[footnote continued on next page]*

616, 620.)  This deferential standard of review applies to challenges to the scope of an EIR's analysis of a topic, the methodology used for studying an impact and the reliability or accuracy of the data upon which the EIR relied because these types of challenges involve factual questions.  (*Saltonstall v. City of Sacramento* (2015) 234 Cal.App.4th 549; see also, *Bakersfield Citizens for Local Control v. City of Bakersfield* (2004) 124 Cal.App.4th 1184, 1198.)

We have not found a threat of victory in this record.  We agree with the trial court that Coalition was neither a prevailing party nor a catalyst to Yucaipa's action of revoking the land use entitlements.

## DISPOSITION

The judgment is affirmed.  Costs are awarded to Respondents.

RAMIREZ         
P. J.

We concur:

McKINSTER      
        J.

MILLER        
        J.

---

*[footnote continued from previous page]*
it is possible that the prior appeal would have been dismissed for an inadequate record. We note that both parties have referred to the Administrative Record in their respective briefs in the current matter, but that record is not before us in this appeal, either.  It is the duty of the appellant to present an adequate record to the court from which prejudicial error may be shown.  (*Dawson v. Toledano* (2003) 109 Cal.App.4th 387, 402; *Kurinij v. Hanna & Morton* (1997) 55 Cal.App.4th 853, 865.)

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

### ORDER

| | |
|---|---|
| COALITION FOR A SUSTAINABLE FUTURE IN YUCAIPA,<br>    Plaintiff and Appellant, | E057589 |
| v. | (Super.Ct.No. CIVSS708513) |
| CITY OF YUCAIPA et al.,<br>    Defendants and Respondents; | The County of San Bernardino |
| TARGET STORES, INC.,<br>    Real Party in Interest and<br>Respondent. | |

A request having been made to this court pursuant to California Rules of Court, rule 8.1120(a), for publication of a nonpublished opinion heretofore filed in the above matter on June 8, 2015, and it appearing that the opinion meets the standards for publication as specified in California Rules of Court, rule 8.1105(c),

IT IS SO ORDERED that said opinion be certified for publication pursuant to California Rules of Court, rule 8.1105(b).

RAMIREZ_____
                              Presiding Justice

I concur:

McKINSTER_____
                              J.