Filed 9/17/21  S.F. Baykeeper v. Cal. State Lands Com. CA1/4
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| SAN FRANCISCO BAYKEEPER, INC., <br><br>     Plaintiff and Appellant, <br><br> v. <br><br> CALIFORNIA STATE LANDS COMMISSION, <br><br>     Defendant and Respondent; <br><br> HANSON MARINE OPERATIONS, INC., <br><br>     Real Party in Interest. | A159693 <br><br> (City & County of San Francisco Super. Ct. No. CPF-12-512620) |

San Francisco Baykeeper, Inc. (Baykeeper) and the California State Lands Commission (the commission) appear before this court for the third time in this action, which has disputed the commission's issuance of mineral extraction leases to real party in interest Hanson Marine Operations, Inc. (Hanson). In the present appeal, Baykeeper challenges the order denying its motion for attorney fees under Code of Civil Procedure section 1021.5. We find no error and shall affirm the order.

## Background

The relevant facts are largely undisputed. In 2012, Baykeeper filed a petition for writ of mandate challenging the commission's approval of several

1

10-year mineral extraction leases that authorized Hanson to dredge mine sand from under the San Francisco Bay. Baykeeper's petition argued, among other things, that the commission violated the common law public trust doctrine by authorizing this extraction by private companies. The trial court found in favor of the commission and rejected Baykeeper's argument that the commission was required to conduct a public trust analysis before approving the sand mining leases.[1] Baykeeper appealed.

In *Baykeeper I*, a different panel of this court held that the commission's "authority to approve private sand mining leases of public trust property carries with it an 'affirmative duty to take the public trust into account . . . and to protect public trust uses whenever feasible' " and that the commission had not "fulfilled that duty in this case." (*Baykeeper I, supra*, 242 Cal.App.4th at p. 234.) This court rejected the commission's arguments that private sand mining is per se a public trust use of the bay and that the commission had unfettered discretion to approve the leases as a public trust use of the bay because the Hanson leases would satisfy a public need for construction grade sand. (*Id.* at pp. 235–238.) The court remanded with directions to the trial court to grant the writ of mandate. (*Id.* at p. 243.)

---

[1] The common law public trust doctrine is comprised of several principles that protect the public's right to use and enjoy property held within the public trust. (*San Francisco Baykeeper, Inc. v. State Lands Com.* (2015) 242 Cal.App.4th 202, 232 (*Baykeeper I*).) While "[t]here is no set 'procedural matrix' for determining state compliance with the public trust doctrine, . . . ' " "[a]ny action which will adversely affect traditional public rights in trust lands is a matter of general public interest and should therefore be made only if there has been full consideration of the state's public interest in the matter; such actions should not be taken in some fragmentary and publicly invisible way. Only with such a safeguard can there b[e] any assurance that the public interest will get adequate public attention." ' " (*Id.* at p. 234.)

Baykeeper then recovered by way of settlement attorney fees for work performed through the issuance of the *Baykeeper I* opinion.

On remand, the trial court issued a peremptory writ directing the commission to reevaluate its determination in light of the common law public trust doctrine. In June 2016, the commission presented a staff report recommending the re-approval of the leases on two grounds: The project's proposed sand mining was a public trust use and, in any event, the leases would not substantially impair public rights. In November 2016, the commission sought an order discharging the writ. Baykeeper opposed the motion, arguing that the commission had again unlawfully defined sand mining as a public trust use in violation of *Baykeeper I* and that the commission's alternative finding that sand mining would not impair the trust was not supported by substantial evidence. In April 2017, the trial court discharged the writ, finding that the commission had fulfilled the procedural requirements of the peremptory writ, and that the record supported its public trust findings. Baykeeper again appealed.

In October 2018, in *San Francisco Baykeeper, Inc. v. State Lands Com.* (2018) 29 Cal.App.5th 562 (*Baykeeper II*), a different panel of this court affirmed the order discharging the preemptory writ. The court forcefully rejected the first ground on which the commission had relied but approved the alternative ground. The court concluded, as relevant here, that the prior determination that private sand mining activities do not qualify as a public trust use of submerged lands under the bay was law of the case that the commission was not free to ignore. (*Id*. at p. 577.) The court explained that "by adopting the public trust analysis in the [commission's] [s]taff report, the [commission] continued to employ the same erroneous theory that it used in *Baykeeper I* to attempt to avoid having to consider the public trust doctrine at

3

all." (*Id.* at p. 578.) Citing *Baykeeper I*, the court emphasized that "the defining principles of the public trust doctrine establish that, by its very nature, a public trust use is a use that facilitates public access and enjoyment of trust property for such purposes as navigation, commerce, and recreation. [Citation.] The Hanson leases, which authorize private commercial sand mining, are not a public trust use of the submerged lands at issue in this case." (*Ibid*.) Nonetheless, the court concluded that substantial evidence supported the commission's alternative finding that the sand mining permitted by the leases will further the interests of the public and the state without impairing public trust uses or values. (*Id.* at pp. 580, 581–582.)

In June 2019, Baykeeper filed a motion seeking another award of attorney fees for its work in the trial court opposing the motion for discharge and in this court challenging the trial court's order discharging the peremptory writ. The trial court denied the motion  and Baykeeper timely filed a notice of appeal.

## Discussion

Code of Civil Procedure section 1021.5 (section 1021.5) authorizes a court to "award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement . . . are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any."

"Section 1021.5 codifies the private attorney general doctrine the Supreme Court adopted in *Serrano v. Priest* (1977) 20 Cal.3d 25. [Citation.] " ' "The doctrine rests upon the recognition that privately initiated lawsuits

4

are often essential to the effectuation of the fundamental public policies embodied in constitutional or statutory provisions, and that, without some mechanism authorizing the award of attorney fees, private actions to enforce such important public policies will as a practical matter frequently be infeasible." ' " ' [Citation.] ' "In short, section 1021.5 acts as an incentive for the pursuit of public interest-related litigation that might otherwise have been too costly to bring." ' " (*Save Our Heritage Organisation v. City of San Diego* (2017) 11 Cal.App.5th 154, 159–160.)

We review a decision awarding attorney fees under section 1021.5 for abuse of discretion. (*Save Our Heritage Organisation v. City of San Diego*, *supra*, 11 Cal.App.5th at p. 160.) However, where resolution of the appeal "turns primarily on interpretations of section 1021.5 and applicable case authorities, which present questions of law, we review de novo." (*Ibid*.)

Here, the trial court concluded as a threshold matter that Baykeeper was not entitled to attorney fees because it was not a "successful party" in the post-*Baykeeper I* litigation. (See *Ebbetts Pass Forest Watch v. Department of Forestry & Fire Protection* (2010) 187 Cal.App.4th 376, 381 (*Ebbetts Pass*) [party seeking section 1021.5 attorney fees must first be determined to be "a successful party"].)

The terms "successful party" and "prevailing party" are synonymous. (*Graham v. DaimlerChrysler Corp.* (2004) 34 Cal.4th 553, 570 (*Graham*).) In *Graham*, the court explained that the term "successful party" should be construed broadly and pragmatically. (*Id.* at p. 565.) "The term 'successful party,' as ordinarily understood, means the party to litigation that achieves its objectives." (*Id.* at p. 571.) " 'In determining whether a plaintiff is a successful party for purposes of section 1021.5, "[t]he critical fact is the impact of the action, not the manner of its resolution." [Citation.] [¶] The trial

court in its discretion "must realistically assess the litigation and determine, from a practical perspective, whether or not the action served to vindicate an important right so as to justify an attorney fee award" under section 1021.5.' " (*Id*. at p. 566.) Accordingly, "[i]t is not necessary for a plaintiff to achieve a favorable final judgment to qualify for attorneys' fees so long as the plaintiff's actions were the catalyst for the defendant's actions, but there must be some relief to which the plaintiff's actions are causally connected." (*Coalition for a Sustainable Future in Yucaipa v. City of Yucaipa* (2015) 238 Cal.App.4th 513, 521 (*Yucaipa*); see also *Westside Community for Independent Living, Inc. v. Obledo* (1983) 33 Cal.3d 348, 353 ["Where there is no causal connection between the plaintiff's action and the relief obtained, an attorney fee award is not proper."].)

Here, there is no dispute that Baykeeper was the prevailing party in the initial proceedings leading to the *Baykeeper I* decision. Baykeeper secured a preemptory writ requiring the commission to apply the public trust doctrine before approving the leases. The litigation produced a published appellate opinion with potential impact beyond this particular dispute, clarifying what may be considered a public trust use of natural resources, and making clear that private undersea mining is not such a use. Baykeeper was compensated for its efforts in obtaining the writ, presumably as authorized by section 1021.5.

Baykeeper's success in obtaining the *Baykeeper I* decision, however, does not necessarily support an attorney fee award for work performed in connection with the *Baykeeper II* decision. (*National Parks & Conservation Assn. v. County of Riverside* (2000) 81 Cal.App.4th 234, 240 ["it is not true that a previously successful party is entitled to fees for postjudgment litigation regardless of the outcome of that litigation" (italics omitted)].) As

the trial court explained, Baykeeper was awarded no relief on the second appeal, no further compliance with the public trust doctrine was required and the leases were not impacted. To the contrary, in *Baykeeper II*, this court affirmed the order discharging the writ, finding that the commission had fully complied with its obligations. (*Baykeeper II*, *supra*, 29 Cal.App.5th at pp. 581–582 [finding that the commission had "performed its duty to take the public trust into account" and that substantial evidence supported the commission's finding that "the project will not impair public trust uses or values"].) Accordingly, Baykeeper was not the successful party with respect to that part of the litigation. (See *National Parks & Conservation Assn. v. County of Riverside*, *supra*, 81 Cal.App.4th at pp. 239–240 [petitioner who prevailed on a writ petition challenging an environmental impact report and recovered attorney fees for related work, was not a successful party under section 1021.5 with respect to its unsuccessful challenge to motion to discharge the writ.)

Baykeeper's arguments to the contrary are not persuasive. Baykeeper argues that *Baykeeper II* corrected the commission's "dangerously erroneous understanding of the public trust doctrine" and that as a result of *Baykeeper II*, the commission will no longer be able to rely on its erroneous understanding of the public trust doctrine. It may fairly be said that in *Baykeeper II* this court chastised the commission for disregarding its prior interpretation of the public trust doctrine. Nonetheless, in the second appeal the court merely confirmed and reiterated its prior holding that sand mining by a private company is not a public trust use as a matter of law. (*Baykeeper II*, *supra*, 29 Cal.App.5th at pp. 579–580.) The court held that its prior ruling to that effect was binding as the law of the case. (*Id.* at pp. 577–578.) It is arguable whether *Baykeeper II* provides any additional clarification of the

7

public trust doctrine, or merely emphasizes what was already determined in *Baykeeper I.* In all events, the trial court did not err in finding that the second decision, unlike the first, provided no significant public benefit that justified an additional award of attorney fees under section 1021.5. (*Ebbetts Pass*, *supra,* 187 Cal.App.4th at p. 388.)

*Ebbetts Pass*, *supra,* 187 Cal.App.4th 376 is instructive. In that case, two environmental organizations sought to recover attorney fees under section 1021.5 after unsuccessfully petitioning the courts for a writ of mandate to overturn the California Department of Forestry and Fire Protection's approval of three timber harvesting plans. (*Id.* at p. 379.) The environmental organizations argued that despite their failure to secure a writ overturning the approved plans, they were "successful part[ies]" entitled to attorney fees under section 1021.5 because their appeals led to a published decision of the California Supreme Court clarifying the law regarding California Department of Forestry and Fire Protection's authority and duty to analyze herbicide use. (*Id.* at p. 380.) The appellate court disagreed, explaining that "[w]hile the Supreme Court agreed with plaintiffs' preliminary contentions, the court rejected the corresponding factual contentions that the challenged [p]lans and [California Department of Forestry and Fire Protection's] comments were substantively defective. Instead, the court found that [real party in interest and the California Department of Forestry and Fire Protection] had complied with the applicable environmental laws and had adequately assessed the environmental impacts of potential herbicide use despite their claim that they need not do so. [Citation.] Therefore, while the court may have clarified the law regarding plaintiffs' legal contentions, the court rejected those contentions because they lacked support in the record and denied plaintiffs

8

the relief they requested. To conclude that plaintiffs were successful under these circumstances would be an unwarranted expansion of section 1021.5." (*Id*. at p. 388.) In that case, the government agency charged with approving the plans had made alternative findings which adequately assessed the environmental impacts of potential herbicide use despite its incorrect preliminary finding that it need not do so. (*Ibid*.)

Similarly here, while the court in *Baykeeper II* agreed with Baykeeper that the commission had again improperly deemed private sand mining a public trust use, it did not invalidate the leases to which Baykeeper objected because the commission had also properly assessed the public trust interests despite its incorrect determination that it need not do so. In this regard, Baykeeper is no different than any number of litigants who make a successful legal argument on appeal, but ultimately lose their case on other grounds. (See *Vargas v. City of Salinas* (2011) 200 Cal.App.4th 1331, 1339 ["fact that the Supreme Court accepted part of plaintiffs' legal analysis" does not make them a successful party where "plaintiffs obtained no relief and their lawsuit had no merit"]; *Karuk Tribe of Northern California v. California Regional Water Quality Control Bd., North Coast Region* (2010) 183 Cal.App.4th 330, 335–336 [plaintiff was not prevailing party where only relief obtained was a limited remand to permit the state agency to augment the reasoning behind its decision that it was without authority to grant the private parties' request that it enforce state law].) As the court noted in *Ebbetts Pass, supra*, 187 Cal.App.4th at page 387, "It seems anomalous that a party could bring a lawsuit, lose the lawsuit and effectively lose with respect to the goal of their lawsuit and still require the public to pay for their attorney fees. Yet that would be the consequence of plaintiffs' argument."

Baykeeper places reliance on *Harbor v. Deukmejian* (1987) 43 Cal.3d 1078, 1103 for the proposition that "a favorable ruling on a legal issue can be sufficient to award attorneys' fees." However, there are significant differences between the facts in that case and those here. In *Harbor v. Deukmejian* petitioners challenged the Governor's constitutional authority to veto a single provision of a bill containing 71 sections enacting, amending and repealing numerous provisions in several different codes. (*Id.* at p. 1083.) The Supreme Court agreed with the merits of petitioners' contentions but concluded that retroactive application of its ruling would open the door to challenges of many other provisions of substantive law contained in similar acts, so the court applied its ruling prospectively and denied petitioners relief. (*Id.* at pp. 1089–1093, 1101–1102.) Despite the absence of relief, the court held that petitioners were a successful party entitled to attorney fees under section 1021.5 because the court's decision had vindicated the principle upon which they brought the action. (*Id.* at p. 1103.) As the court in *Ebbetts Pass* noted, however, the fee award in *Harbor v. Deukmejian* was the result of a "unique circumstance." (*Ebbetts Pass, supra*, 187 Cal.App.4th at p. 383.) But for the policy reasons cited by the court, petitioners would have prevailed in the litigation. (*Ibid.*) Moreover, unlike the limited precedential consequences of the decision in *BayKeeper II,* the principle established in *Harbor v. Deukmejian* would have far-reaching consequences on the governor's authority with respect to future legislation.

Finally, Baykeeper is not entitled to fees because of what it characterizes as the commission's "intransigence" and failure to comply with *Baykeeper I.* Baykeeper contends that it "should be compensated for the substantial work it had to perform in order to hold the [commission] accountable to this court's rulings in *Baykeeper I and II.*" Simply correcting

an agency's misunderstanding, however, does not necessarily satisfy section 1021.5 criteria. The purported change in the commission's application of the public trust doctrine that assertedly will result from the *Baykeeper II* decision is not such a " 'voluntary' change in conduct" to invoke the so-called catalyst theory. (*Yucaipa, supra*, 238 Cal.App.4th at p. 522 ["When, after litigation is initiated, a defendant has voluntarily provided the relief a plaintiff is seeking, the chronology of events may raise an inference that the litigation was the catalyst for the relief."]; see also *Graham v. DaimlerChrysler Corp., supra*, 34 Cal.4th at p. 576 [catalyst theory may apply "[w]hen a lawsuit has been mooted by a defendant's change in conduct"].) Other than *Harbor v. Deukmejian, supra*, 43 Cal.3d 1078, discussed above, Baykeeper has not cited and we have not found a case in which attorney fees were awarded under the catalyst theory to a party who lost the lawsuit but the decision clarified a principle that might be applied in future unrelated litigation. (See *Yucaipa, supra,* at p. 524 ["None of the cases applying the catalyst theory involved situations in which an adverse judgment had already been rendered against the party seeking attorney fees."].)

Baykeeper cites *La Mirada Avenue Neighborhood Assn. of Hollywood v. City of Los Angeles* (2018) 22 Cal.App.5th 1149, 1157 for the proposition that a party seeking fees under section 1021.5 need not even "win" the lawsuit so long as "the lawsuit was a 'catalyst' that motivated the defendant to alter its behavior." But in that case the trial court invalidated six of eight variances challenged by plaintiff and while the ruling was on appeal, the city amended its municipal code to cure the deficiencies in the variances. (*Id.* at pp. 1154–1155.) In that instance, the court reasonably concluded that "plaintiffs' lawsuit served as a catalyst that motivated the [c]ity—a defendant in this action—to amend the [municipal code] to create a new subarea F specifically

11

to make the [p]roject lawful under the municipal code." (*Id*. at p. 1157.) The situation here plainly is very different.

Accordingly, the trial court properly concluded that Baykeeper is not a successful party with respect to the portion of the litigation for which it now seeks additional fees.

## Disposition

The order denying Baykeeper's motion for attorney fees is affirmed.


POLLAK, P. J.

WE CONCUR:

STREETER, J.
BROWN, J.