Filed 3/4/26

<u>CERTIFIED FOR PUBLICATION</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| PHYSICIANS FOR SOCIAL RESPONSIBILITY - LOS ANGELES et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> DEPARTMENT OF TOXIC SUBSTANCES CONTROL, <br><br> Defendant and Respondent. | C100487 <br><br> (Super. Ct. No. 34-2013-80001589-CU-WM-GDS) |

APPEAL from a judgment of the Superior Court of Sacramento County, Shelleyanne W.L. Chang, Judge.  Affirmed.

Strumwasser & Woocher, Michael J. Strumwasser, Andrea Sheridan Ordin, Beverly Grossman Palmer, Julia Michel, Samantha McNichols; Consumer Watchdog, Harvey Rosenfield and Pamela Pressley for Plaintiffs and Appellants.

Rob Bonta, Attorney General, David Zaft and Kavita Lesser, Deputy Attorneys General for Defendant and Respondent.

1

In *Physicians for Social Responsibility - L.A. v. Dept. of Toxic Substances Control* (May 2, 2023, C088821) (nonpub. opn.) (*Physicians*), we affirmed the superior court's ruling that denied appellants' petition for a writ of mandate challenging respondent's failure to comply with the California Environmental Quality Act (CEQA) (Pub. Resources Code, § 21000 et seq.). The parties are again before us, this time for the purpose of determining whether attorney fees are to be awarded to appellants as the prevailing party. The superior court found appellants were not entitled to fees under Code of Civil Procedure section 1021.5[1] and denied appellants' request for fees. We conclude that, contrary to appellants' claims, the trial court did not abuse its discretion in so ruling.

LEGAL AND FACTUAL BACKGROUND

For purposes of this appeal, we rely on the following summary of the statement of facts in our prior opinion. (*Physicians, supra*, C088821.)

For decades, the federal government made and tested liquid-rocket engines, nuclear reactors, and various nuclear applications at the Santa Susana Field Laboratory (SSFL) in southeastern Ventura County. As a result, the soil, groundwater, and bedrock were seriously contaminated. During this time, the Boeing Company (Boeing), who owns the majority of the land, leased 90 acres of the site, known as Area IV, to the federal Department of Energy (DOE). DOE ended its nuclear research program at SSFL in the 1980s. Boeing's intent to demolish several of its buildings within Area IV spawned the underlying lawsuit.

SSFL has been undergoing cleanup efforts for years. Different aspects of the cleanup are being carried out under different federal and state authorities. The federal government, through the DOE, is responsible for supervising and implementing the

---

[1]    Undesignated statutory references are to the Code of Civil Procedure.

cleanup of radioactive contamination. California's Department of Toxic Substances Control (DTSC) is the lead agency responsible for regulating the cleanup of chemical contamination. Through the Hazardous Waste Control Law (Health & Saf. Code, § 25100 et seq.) and California's Carpenter-Presley-Tanner Hazardous Substance Account Act (HSAA) (Health & Saf. Code, § 78000 et seq.)[2], DTSC regulates soil and groundwater cleanup. In addition to its overall regulatory authority pursuant to statute, DTSC oversees the chemical remediation of SSFL pursuant to two consent orders: the 2007 consent order for corrective action (2007 Order), and the 2010 administrative order on consent for remedial action (2010 AOC). DTSC's selection of the final remedies to remediate the contaminated soil and groundwater at the SSFL site is subject to environmental review pursuant to CEQA. At the time of the underlying lawsuit, DTSC represented it was conducting a CEQA review of the proposed soil and groundwater cleanup required under the 2007 Order and the 2010 AOC.

When this litigation was initiated in August 2013, Boeing had notified DTSC of its intent to demolish four structures. Appellants raised concerns about the environmental consequences of demolition and offsite disposal. Appellants filed a petition for writ of mandate asserting claims under CEQA and the Administrative Procedure Act (Gov. Code, § 11340 et seq.), along with a claim that the State Department of Public Health (DPH) violated a writ of mandate issued in 2002. Within days, DTSC and Boeing agreed to pause Area IV demolition.

---

**2**      Since our prior decision in *Physicians, supra*, C088821, the Legislature has reorganized and recodified the HSSA from Health and Safety Code former section 25300 et seq. to Health and Safety Code section 78000 et seq. without substantive change. (Stats. 2022, ch. 257.)

In an amended writ petition, appellants raised five causes of action. As relevant here,[3] appellants asserted that Boeing's demolition and disposal activity was subject to CEQA but that DTSC failed to consider the environmental impact of such activity.

Like the superior court, we disagreed. We concluded that although the soil and groundwater remediation programs were undisputably subject to CEQA, the demolition of the Area IV buildings was a private activity entirely within Boeing's discretion and constituted activity that was not subject to discretionary approval by a public agency, and thus not subject to CEQA. The California Supreme Court denied review. (*Physicians, supra*, C088821, rev. den. July 26, 2023, S280480.) Thus, appellants did not obtain any of the relief they sought through either the judgment issued by the superior court or the decision by this court.

In June 2023, after we issued our decision but before our high court denied review, DTSC issued the final Environmental Impact Report (final EIR) for SSFL. Regarding the Area IV building demolition, the final EIR stated: "To facilitate a more conservative and quantitative analysis of impacts, DTSC is including the remaining Boeing building demolition as part of the analysis of project impacts."[4] The "Public Review" section of the final EIR states, in part, "Although no prior authorization from DTSC is required for Boeing's building demolition, DTSC analyzed this activity in the Final []EIR as if it were part of the project in order to provide a conservative assessment of the impacts from the site cleanup." The "Public Review" and "Responses to Comments" sections of the final

---

[3]     Appellants contend that as relief was only achieved from DTSC, appellants do not seek fees from DPH or Boeing. Accordingly, we need only discuss the prior claim against DTSC.

[4]     In its prior draft, DTSC described the demolition of Boeing's Area IV buildings within the larger remediation project as "not subject to DTSC approval, and is therefore not evaluated or described in this []EIR as part of the proposed project. However, impacts stemming from this action are included in the cumulative analysis of this []EIR."

EIR both note that aspects of the demolition of the buildings were the subject of the litigation that resolved in favor of DTSC on all claims.

According to appellants, DTSC's analysis of Boeing's demolition "as if it were part of the project to provide a conservative estimate of project impacts" means appellants obtained the primary objective of the litigation, i.e., "review in the Final EIR, reflecting DTSC's efforts to comply with CEQA and to mitigate the impacts of the entire SSFL remediation, including Boeing's demolition." Stating that the litigation was a catalyst for this outcome, appellants contend they are a "successful party" under a catalyst theory applicable to section 1021.5 and filed a motion for attorney fees to be recovered from DTSC.

The superior court denied appellants' request on the basis that appellants could not show they were the successful party within the meaning of section 1021.5. The court found that "[a]t the time DTSC took the action Petitioners claim was the result of this litigation, there was *no* threat of victory as DTSC had already achieved judgment in its favor before the trial court and the appellate court." Citing to *Coalition for a Sustainable Future in Yucaipa v. City of Yucaipa* (2015) 238 Cal.App.4th 513 (*Yucaipa*), the court noted that " '[n]one of the cases applying the catalyst theory involved situations in which an adverse judgment had already been rendered against the party seeking attorney fees.' " The court specifically rejected appellants' argument that the litigation had merit because appellants successfully obtained an injunction in 2013, finding that whether the litigation initially had merit was irrelevant because both the superior and appellate courts have since denied the petition on its merits, rendering the lawsuit "objectively without legal merit." (*Skaff v. Rio Nido Roadhouse* (2020) 55 Cal.App.5th 522, 542.) The court noted that "DTSC's voluntary modification of the subject EIR *after successful litigation in their favor*, should not subject DTSC to attorneys' fees that they otherwise would not be required to pay if they had not voluntarily taken the initiative and modified the EIR subsequent to the litigation's conclusion."

Appellants appealed.

DISCUSSION

A. Legal Background

"In general, a prevailing party may recover attorney's fees only when a statute or an agreement of the parties provides for fee shifting." (*Kirby v. Immoos Fire Protection, Inc.* (2012) 53 Cal.4th 1244, 1248.) The private attorney general doctrine, codified in section 1021.5, is such a fee-shifting statute. (*Laffitte v. Robert Half Internat. Inc.* (2016) 1 Cal.5th 480, 489.) "To qualify for fees under the statute, a [party] must show that (1) it is a successful party; (2) the action resulted in the enforcement of an important right affecting the public interest; (3) a significant benefit was conferred on the general public or a large class of persons; and (4) the necessity of private enforcement and the attendant financial burden make an award of fees appropriate." (*Department of Water Resources Environmental Impact Cases* (2022) 79 Cal.App.5th 556, 571.)

While the term "prevailing party" is synonymous with "successful party," it is not always necessary for a plaintiff to obtain a judgment in its favor to qualify as a successful party. (*Yucaipa, supra*, 238 Cal.App.4th at p. 521.) " 'The "catalyst theory" permits an award of attorney fees even when the litigation does not result in a judicial resolution if the defendant changes its behavior substantially because of, and in the manner sought by, the litigation.' " (*California Public Records Research, Inc. v. County of Yolo* (2016) 4 Cal.App.5th 150, 191, quoting *Yucaipa*, at p. 521.) To obtain attorney fees under this theory, the moving party must establish that (1) its "lawsuit was a catalyst motivating the defendants to provide the primary relief sought"; (2) "the lawsuit had merit and achieved its catalytic effect by threat of victory, not by dint of nuisance and threat of expense"; and (3) it "reasonably attempted to settle the litigation prior to filing the lawsuit." (*Tipton-Whittingham v. City of Los Angeles* (2004) 34 Cal.4th 604, 608.)

In ruling on a request for attorney fees, the trial judge must determine who is the successful party under the catalyst theory. We review the trial judge's determination for

abuse of discretion. (*City of San Clemente v. Department of Transportation* (2023) 92 Cal.App.5th 1131, 1151.) We will reverse only if there is " 'no reasonable basis' " for the court's conclusion. (*Westside Community for Independent Living, Inc. v. Obledo* (1983) 33 Cal.3d 348, 355.)

B. Analysis

The superior court denied appellants' motion for attorney fees under section 1021.5, finding that appellants could not meet their burden of demonstrating that their lawsuit had merit and achieved its catalytic effect by threat of victory, the second element of the catalyst theory, and thus were not "successful parties" within the meaning of section 1021.5.

The second element of the catalyst theory requires inquiry into an action's objective legal merit, not a plaintiff's subjective beliefs regarding the action. (*Graham v. DaimlerChrysler Corp.* (2004) 34 Cal.4th 553, 575 (*Graham*).) "Our Supreme Court has defined merit, for purposes of the catalyst rule, to mean ' "not frivolous, unreasonable, or groundless," ' i.e., that the questions of law or fact are ' " 'grave and difficult.' " ' " (*Department of Water Resources Environmental Impact Cases, supra*, 79 Cal.App.5th at p. 572, fn. 5.) This determination "is not unlike the determination [the court] makes when asked to issue a preliminary injunction, i.e., not a final decision on the merits but a determination at a minimum that ' "the questions of law or fact are grave and difficult." ' " (*Graham*, at pp. 575-576.)

Challenging the superior court's conclusion, appellants contend the trial court erred in its inflexible approach to determining whether the lawsuit had merit because it overlooked the reality that DTSC deviated from its position during litigation to ultimately agree that demolition in Area IV should be considered in its CEQA analysis—an action that itself demonstrates appellants' petition was not frivolous. Appellants further argue that early litigation successes, such as the preliminary injunction and defeat of a motion for summary judgment, provide additional proof that the litigation had merit. Finally,

7

appellants contend that the timing of the issuance of the final EIR establishes the merits of the lawsuit because it creates an inference that DTSC deliberately delayed the report to avoid "mooting the case, as would occur in the typical 'catalyst' fee award." We are not persuaded.[5]

As an initial matter of law, we are unwilling to extend the catalyst theory here wherein the relief sought in the underlying litigation was voluntarily provided only *after* the merits of the claims had been fully litigated to a final judgment against appellants. (See *Skaff v. Rio Nido Roadhouse, supra*, 55 Cal.App.5th at p. 540 ["we are not convinced that the catalyst theory should even apply here," as "[t]he catalyst theory is generally not invoked in cases where the merits have been fully litigated to a final judgment"]; *Council for Education & Research on Toxics v. Starbucks Corp.* (2022) 84 Cal.App.5th 879, 901 & fn. 15 [questioning whether the plaintiff/appellant "could be deemed a successful party under the catalyst theory after litigating and losing its case on the merits" but deciding issue of attorney fees on different grounds].) "What makes a case come under the catalyst theory is . . . the voluntary action of the defendant *without any judicial resolution of the issues*." (*County of Colusa v. California Wildlife Conservation Bd.* (2006) 145 Cal.App.4th 637, 658, italics added.) In other words, the catalyst theory may provide a moving party a pathway to attorney fees "[i]n the absence of a judicial resolution." (*Skinner v. Ken's Foods, Inc.* (2020) 53 Cal.App.5th 938, 946.) Considering the judicial resolution reached in this case, namely that the lawsuit lacked merit, we conclude that an award of attorney fees under the catalyst theory is unwarranted.

---

[5]     Appellants also contend that the remaining elements of a successful party under a catalyst theory and the additional requirements under section 1021.5 are met. In light of our conclusion that the record establishes that the court did not abuse its discretion in concluding that appellants' lawsuit was not a catalyst for the DTSC's postlitigation decision to analyze environmental impacts of the demolition of Area IV buildings, we need not address them.

In an effort to convince us otherwise, appellants rely on *Graham* and urge us "To focus on the fact that judgment was entered against Appellants is inconsistent with the Supreme Court's express recognition that '[o]ur prior cases uniformly explain that an attorney fee award may be justified even when plaintiff's legal action does not result in a favorable final judgment.' " (See *Graham, supra*, 34 Cal.4th at p. 565.) We find the factual difference in *Graham* significant and appellants misapply its holding.

The plaintiffs in *Graham* purchased a truck from the defendant, which the defendant had marketed as capable of towing 6,400 pounds when the truck could tow only 2,000 pounds. The plaintiffs filed suit against the defendant alleging a single breach of warranty cause of action and sought return of their purchase or lease payments, compensatory damages, and attorney fees. (*Graham, supra*, 34 Cal.4th at p. 562.) While the matter was pending, the defendant offered a repurchase or replacement to all truck buyers, including the plaintiffs. The defendant then demurred to the complaint, and the trial court sustained the demurrer without leave to amend and dismissed the case, finding it was moot. (*Id*. at p. 563.) However, litigation regarding attorney fees continued and the trial court ultimately awarded the plaintiffs attorney fees under the catalyst theory. The Court of Appeal affirmed and our Supreme Court granted review. (*Id*. at pp. 563-565.)

In upholding the award of attorney fees, the Supreme Court reinforced that "an attorney fee award may be justified even when plaintiff's legal action does not result in a favorable final judgment" (*Graham, supra*, 34 Cal.4th at p. 565), and explained that "[t]he principle upon which the theory is based—that we look to the 'impact of the action, not its manner of resolution' [citation]—is fully consistent with the purpose of section 1021.5: to financially reward attorneys *who successfully prosecute cases* in the public interest." (*Id*. at p. 568, italics added.) And therein lies the problem. Appellants here did not *successfully prosecute* the underlying case. Rather, they prosecuted a case

9

that both the trial court and this court determined had no legal merit. *Graham* addressed this type of situation, yet appellants spend no time discussing that portion of the decision.

*Graham* went on to analyze what the Legislature intended as "successful party" as used in section 1021.5. In doing so it focused on a court's need to inquire "not into a defendant's subjective belief about the suit but rather to gauge, objectively speaking, whether the lawsuit had merit." (*Graham, supra*, 34 Cal.4th at p. 575.) *Graham* held, "The trial court must determine that the lawsuit is not 'frivolous, unreasonable or groundless' (*Stivers v. Pierce* [(9th Cir. 1995)] 71 F.3d [732,] 752, fn. 9), in other words that its result was achieved 'by threat of victory, not by dint of nuisance and threat of expense.' " (*Ibid*.) The *Graham* court concluded that in determining the second element of the catalyst theory, i.e., whether the relevant result was achieved " 'by threat of victory,' " the "trial court may review [the] factual background not only to determine the lawsuit's catalytic effect but also its merits. *Attorney fees should not be awarded for a lawsuit that lacks merit*, even if its pleadings would survive a demurrer." (*Id*. at pp. 575, 576, italics added.) The court also saw "no reason to limit a trial court's inquiry regarding the merits of the case to an examination of whether the pleadings state a cause of action." (*Id*. at p. 576.) Thus, if our Supreme Court believes that "trial courts will be able to conduct an abbreviated but meaningful review of the merits of the litigation" in cases that were terminated prior to final judgment, we see no impediment to a court's ability to rely on a final judgment on the merits rendered against the moving party in determining the merit and catalytic effect of the lawsuit. (*Ibid*.) After all, a final judgment on the merits against the moving party settles the question of "*objectively speaking*, whether the lawsuit had merit." (*Id*. at p. 575, italics added.)

Appellants cite no legal authority for the proposition that the catalyst theory has been applied in situations where, as here, the moving party has previously lost the underlying suit through judgment on the merits against it. (See *Tipton-Whittingham v. City of Los Angeles, supra*, 34 Cal.4th at p. 607 [lawsuit dismissed when claims were

rendered moot by informal negotiations resulting in comprehensive changes].) As noted by the superior court, DTSC on appeal, and the Fourth District Court of Appeal, "[n]one of the cases applying the catalyst theory involved situations in which an adverse judgment had already been rendered against the party seeking attorney fees. Use of the terminology 'meritorious action' in the catalyst theory cases refers to proceedings which were rendered moot before a judgment on the merits, in order to determine if a party was the prevailing party where there is no judgment. That did not happen here." (*Yucaipa, supra*, 238 Cal.App.4th at p. 524.)

In *Yucaipa*, the city approved land use entitlements to further Target's plan to build a shopping center. The appellant filed a petition for writ of mandate alleging the city's approval violated CEQA. (*Yucaipa, supra*, 238 Cal.App.4th at p. 517.) The trial court denied the petition for writ of mandate. While the appeal was pending, Target was unable to purchase the land and abandoned the project. In turn, the city revoked the land use entitlements. The city and Target then successfully moved to dismiss the appeal as moot and, at the appellate court's direction, the trial court dismissed the underlying action with prejudice. (*Id*. at pp. 518-519.) The appellant then sought attorney fees, arguing that the litigation was the catalyst for the city's revocation of the land use entitlements and thus it was the successful party. (*Id*. at p. 519.) Both the trial and appellate courts disagreed. (*Ibid*.; see also *id*. at p. 525.) In affirming the trial court's order denying attorney fees, the appellate court found the judgment against the appellant demonstrated that the underlying action had no merit and it they could not show it achieved success by threat of victory. The court explained, the " 'action' was the CEQA petition, and that petition had been denied by the trial court's initial judgment, only to be later dismissed with prejudice. . . . [¶] . . . Having lost twice, [the appellant] cannot show 'threat of victory.' " (*Id*. at p. 524.) So too here.

Appellants contend the trial court wrongly relied on *Yucaipa* because it is factually distinguishable and, in concluding the appellant was not "successful" for purposes of

11

attorney fees, the *Yucaipa* court misapplied *Graham*. We agree that the project at issue in *Yucaipa* was different than the one before us and, unlike here, that case was dismissed prior to an appellate review of the merits. Yet in both *Yucaipa* and this case, there was a judicial resolution against the appellants prior to the respondents' voluntary change in behavior. In this case, as in *Yucaipa*, that judicial resolution means there was no "threat of victory," the suit was not a catalyst to the respondents' actions, and the appellants were not a successful party. (*Yucaipa, supra*, 238 Cal.App.4th at p. 525.)

Contrary to appellants' contention, this is consistent with the "broad, pragmatic view of what constitutes a 'successful party' " promoted in *Graham*. (*Graham, supra*, 34 Cal.4th at p. 565.) *Graham* charges the trial court to, in its discretion, " ' "realistically assess the litigation and determine, from a practical perspective, whether or not the action served to vindicate an important right so as to justify an attorney fee award" under section 1021.5.' " (*Id*. at p. 566.) We agree with the trial court's determination that a realistic assessment of this litigation, which ended in a judgment in DTSC's favor, means appellants were not the successful party and therefore not entitled to attorney fees.

Appellants also rely on the chronology of events to support their argument that the lawsuit was the catalyst for the actions taken by DTSC. They contend that because the draft in which DTSC signaled its intent to change course in its CEQA analysis was dated February 2023, three months before our opinion was issued, DTSC clearly modified its behavior as a result of the lawsuit. We recognize that "[w]hen, after litigation is initiated, a defendant has voluntarily provided the relief a plaintiff is seeking, the chronology of events may raise an inference that the litigation was the catalyst for the relief." (*Hogar Dulce Hogar v. Community Development Com. of City of Escondido* (2007) 157 Cal.App.4th 1358, 1366.) However, we disagree that such an inference is appropriate here. First, DTSC presented evidence that the litigation was not a factor in its decision to change the scope of the CEQA analysis. The branch chief for SSFL averred that the "timing of the release of the final EIR was not related in any way to the litigation

12

in this case" and provided several justifications for the timing of the release including the "highly complex and technical nature of the regulatory program and the number of interested parties," mediation with Boeing regarding the implementation of the 2007 Consent Order, and the COVID-19 pandemic. We also note that this lawsuit was nearly 10 years old with all major components of litigation complete when DTSC released its final EIR including the Area IV buildings' demolition. That the release of the final EIR came after we issued our opinion ruling in DTSC's favor removes any possibility that the "threat of victory" was the catalyst to DTSC's actions. "[I]n order to justify a fee award, there must be a causal connection between the lawsuit and the relief obtained." (*Westside Community for Independent Living, Inc. v. Obledo, supra*, 33 Cal.3d at p. 353.) There is no such causal connection here.

Finally, appellants contend that precluding an award under a catalyst theory is inconsistent with public policy because they undertook significant litigation to obtain a benefit for the common good—which they ultimately obtained by DTSC's voluntary postlitigation actions in including the demolition activity in the final EIR. Again, we are not persuaded. As explained in *Graham*, the catalyst theory preserves important policies underlying section 1021.5 by ensuring that a defendant may not litigate vigorously against a meritorious public interest case and then avoid paying attorney fees by voluntarily providing relief before a court order is entered. (*Graham, supra*, 34 Cal.4th at p. 574.) It also preserves judicial resources, by encouraging a plaintiff to discontinue litigation once the defendant acquiesces to the remedy initially sought. (*Id*. at p. 573.) The court stated, "It would be perverse, and contrary to the basic public interest objectives of section 1021.5, to hold that a plaintiff who obtains a final judgment has 'enforced' a right, but not a plaintiff whose litigation position is so strong that it achieves the same result by compelling the defendant to change its conduct rather than face a probable judgment against it." (*Id*. at p. 572.)

Such policy concerns are not present in this case. By litigating the underlying lawsuit for 10 years before obtaining a judgment in its favor, DTSC's voluntary postlitigation actions did not effectuate an avoidance of attorney fees on a meritorious public issue or preserve judicial resources such that appellants should be reimbursed for attorney fees for their efforts in the lawsuit. The catalyst theory exists to award fees to a plaintiff when the plaintiff's litigation is successful and the opposing party provides the requested relief *under the threat of judicial compulsion*. (*Graham, supra*, 34 Cal.4th at pp. 560, 566-568.) Here, DTSC was not under threat of judicial compulsion when it voluntarily included aspects of the demolition of Boeing's Area IV buildings in the final EIR. Public policy associated with the catalyst theory is therefore not offended by the denial of appellants' request for attorney fees in this case.

We conclude appellants have failed to establish the criteria necessary for an award of attorney fees under section 1021.5 on a catalyst theory and thus the trial court did not abuse its discretion in denying appellants' motion for attorney fees. (See *California Public Records Research, Inc. v. County of Yolo, supra*, 4 Cal.App.5th at p. 192.)

DISPOSITION

The judgment and order denying attorney fees are affirmed. DTSC shall recover its costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1) & (2).)

/s/<br>EARL, P. J.

We concur:

/s/<br>HULL, J.

/s/<br>FEINBERG, J.

14